## WILLIAM H. BREWER v. FLINT & PERE MARQUETTE RAILWAY CO.

*Railroad injury to brakeman—Construction of cars—Contributory negligence.*

A brakeman, whose business it also was to couple cars, had his arm crushed in trying to couple to another car a caboose the drawbar of which was some six inches below that of the other car and of cars generally. The caboose had been in that condition for a month, as the brakeman himself knew, and it had been reported for repairs, but the fact that the drawbars were not on the same level must have been apparent to any one attempting to couple the cars, if he used his eyes. *Held*, that he could not recover against the railway company.

Error to Wayne. (Jennison, J.) Jan. 13.—May 13.

CASE. Plaintiff brings error. Affirmed.

*Don M. Dickinson* (*Griffin, Dickinson, Thurber & Hosmer*) for appellant.

*William L. Webber, Wisner & Draper* and *Henry M. Campbell* for appellee.

COOLEY, C. J. Action to recover damages for personal injury caused by defendant's negligence.

The declaration avers that on the 19th day of December, 1881, and for a long time prior thereto, the defendant owned, maintained and operated a railroad, with accompanying locomotives, engines and cars, and employed the plaintiff as a brakeman and car-coupler upon its cars used by it in and about operating its road, and thereupon it became and was the duty of defendant at all times to use due and reasonable care in providing for use by plaintiff, upon its said road, properly constructed cars, and at all times to use reasonable care and diligence in keeping the same in a good, safe and proper condition of repair, so that the same might be in a condition reasonably safe to the life and limb of the brakemen and car-couplers when employed in and about them in the course of their employment; that on the day and year last aforesaid, the defendant, disregarding its said duty, willfully and negligently caused to be used upon its road, and upon a freight train upon which plaintiff was employed as a brakeman and car-coupler as aforesaid, a certain car commonly called a caboose, then and for a long time prior thereto in a condition wholly unsafe and out of repair, in this, that the spring supporting the draw-bar on the end of said caboose had become and was weak, and insufficient to support the same, by reason whereof said draw-bar had fallen below its usual and proper place upon the end of said caboose, which condition of said caboose, on the day and year aforesaid, and for a long time prior thereto, said defendant well knew, or by the use of reasonable care might have known; that on the day and year last aforesaid at New Boston, a station on the said road, while the plaintiff, in the discharge of his duties as a brakeman and car-coupler upon said freight train, was attempting to couple said caboose to a car upon the end of said train, backing down to said caboose for that purpose, without fault on the part of said plaintiff, and when he was exercising due care and ignorant of the condition of said caboose, by reason of the draw-bar on the end of said caboose being out of place and lower than usual, the draw-bar on

the end of the car on the end of said train passed over the draw-bar on said caboose, bringing said car and said caboose together with great force and violence, and catching the plaintiff and so crushing and bruising the right arm of said plaintiff that the same had to be cut off, and otherwise permanently wounding and injuring him.

On the trial the plaintiff testified on his own behalf that he was forty years of age; that he entered the service of defendant as a brakeman in November, 1880; that

"On the morning of the 19th of December, 1881, we took our train—a freight train—as usual from Wayne to go to Monroe, in the State of Michigan, that being our regular run, from Wayne to Monroe and return. The train was made up at Wayne in the ordinary way, just by the shipment of cars, pushing them to get them in station rotation. We were due to leave at 8:30; we usually got out between eight and ten o'clock. The way in which the accident which then happened to me occurred, was as follows: We had to couple charcoal cars to get out of the side track at New Boston—the usual mode of doing that work, as there is an order to take the cars at least twelve cars back from the engine, in the train. New Boston cars would come next to the caboose. We pulled the engine over the switch and stopped the way car this side, and we would leave room enough to kick the other cars into it. The conductor cut the way car off. I was on the top of the train, and we stopped it. After we had stopped the train by the switch and backed the engine over the side track, and kicked the other two cars onto the caboose, I stood there by the caboose to make the coupling. I jumped off to make the coupling, and as the cars came together I reached in in the usual way to make the coupling, but instead of the link dropping, the car passed over—that is, the draw-bar passed over—and shut me in there, catching my arm between the two cars. I had hold of one corner of the car, and the other cars came together and caught my elbow. The usual way in making couplings is to stand, looking towards the head of the train on the left-hand side. I stood with my back to the cars that were coming to me. You usually leave the dead car with link standing up in this manner in the hole, and as they come together you reach in with the hand and take up the link and enter it. The pin usually falls into its place, but if not we reach up and put it in. The cars that were coupled were F. & P. M. cars. One was a way

car and the other was a charcoal car. Ordinarily, there is no difference in height in their construction. The engine, when the cars were kicked down, was detached from the train, and they came together with the engine detached. Part of the time I knew what the effect was of these being different cars in height, and part of the time I didn't. Of course, the first thing I knew I was shut in there fast, and I could not get out. A couple of passengers in the way car I motioned to. I could not speak ; and I beckoned to them with my head to come down, and they did come and tried to pry the cars apart, and got several men with levers to pry them apart, but could not, and I then lost myself for a time. My arm was caught between the ends of the two cars. I was caught all the way from my hips up. The sill of the car I think must have caught me right below the hip joint. I know there was a very sore spot on the back of my thigh, the way the car had caught me. The platform on the end of it was bent back ; there was a platform on the way car, and there the pressure was not so great above as it was below. The severest injury was about the hips and the small of the back. They attempted to pry the cars apart, but could not ; and some one had gone and got the engine, which had gone to the head of the train, and it backed down there and coupled onto the cars and pulled them apart, before they could get me out. They set the brake on the way car and pulled the others away from it. Then they took me onto the pilot of the engine, and carried me to the station, and placed me on a settee, and notified my family."

When plaintiff next saw the caboose car, some eight or nine weeks after his injury, it had not been repaired. The cause of the accident, he thought, was from one end being lower than the other from weakness of the springs. When in proper repair and good condition, cars come squarely against each other on the same line. The cars of the defendant should come together even. Plaintiff had always found them to do so. In the ordinary business of the company there are cars on the track so constructed that the coupling-irons lap over. Those of the Ohio Central are six or seven inches lower than those of defendant, and you have to use a crooked link to couple them ; they have a link for that purpose. Plaintiff had seen this caboose car before, but had not had anything to do with coupling it for a month or two. He

had worked with it the preceding summer, and then noticed that one end was lower than the other, but did not examine to see why it was so, as that was no part of his duty. He thought one end was five or six inches lower than the other, and lower than defendant's other cars.

On cross-examination plaintiff testified that before the injury the caboose had been left on the main track. The engine with the others passed along beyond a switch, Then the engine was cut off and the cars started with a backward motion, to be coupled to the caboose. Two brakemen were on the coal cars, to steady them. The cars came back at a proper rate of speed, to be coupled, and plaintiff passed to the rear of the coal car for the purpose of coupling. He had adjusted the link in the coal car on the side track before it came down, and then got off the train to go back and make the coupling. The pin was set in the draw-bar of the cabin or caboose car, ready to make the coupling. Plaintiff stood with his back to the coal car, as it came down, with his right hand on the rail of the caboose, and was to make the coupling with his left hand. The coal car struck his elbow, forcing his hand back, and breaking his wrist off. If he had had his hand down by his side, his arm would probably not have been broken; but that is not the usual way of making a coupling. Plaintiff had seen this caboose car ever since he had worked on the road, and had worked with it perhaps two months of the time. In the summer before another brakeman came near being caught, coupling the same car. Crooked links are usually carried on the engine for coupling cars of different heights. Plaintiff had coupled the caboose that morning with a car of the Lake Shore road, and it coupled all right, and he naturally supposed it was all right.

On re-examination he stated that when the cars are shunted down for coupling to a stationary car, the brakeman cannot make the coupling and steady himself without putting his hand up. He used his hand in making the coupling and disposed his body as usual, and would have been caught between the cars whether his arm had been caught or not.

An inspector for defendant testified that when a car was found to be unsafe it was customary to report it, and have it sent to the shops for repair. He examined this car in the early part of the month of the injury, and thinking it dangerous to brakemen in coupling, wrote to the master car-builder in charge of the shops, stating the facts. Whether such a communication was received was left in doubt on the evidence.

When the evidence was all in, the circuit judge recapitulated its main features to the jury, and closed by saying that, while sympathizing with the misfortune of the plaintiff, he felt bound by what he believed to be the law, to direct a verdict for defendant; and verdict was rendered accordingly.

The only question on the record in this Court is whether the plaintiff made out any case upon which he should have been permitted to go to the jury. To entitle him to do so, it was necessary for him to give evidence tending to establish two propositions :

*First*, that the defendant, in respect to the injury, had been guilty of a want of care amounting to legal negligence ; and

*Second*, that the plaintiff himself, at the time of the injury, was in the observance of due care for his own protection.

Both these propositions the plaintiff assumes might have been affirmed by the jury.

The negligence attributed to the defendant consisted in continuing to use on its road a car which in coupling exposed the brakemen to exceptional risks. The plaintiff's evidence made it very plain that there was less risk in coupling cars of the same height ; that the injury in this case would not have occurred if the cars had stood as they came together on the same horizontal line ; that this fact was well understood by defendant's inspector, who had recommended that the car be sent to the shops for repairs upon the express ground of danger in coupling. It is contended that under these circumstances the continued use of the car was unjustifiable ; the company being as much bound to keep machinery in

repair so that it shall be safe, as it is to furnish safe machinery at first. *Lawless v. Railroad Co.* 136 Mass. 1; *Muldowney v. Railway Co.* 36 Iowa 463. Compare *Hulett v. Railway Co.* 67 Mo. 239.

It is very evident that the defendant was not in the exercise of the highest care when making use of this car in its business. But the car is hardly to be considered dangerous machinery, in the sense that a defective engine is, or a car with a weakness in some part, which in its ordinary use may result in a breaking down, and put property and persons being transported in peril. This car, for anything that appears, was in perfect running order, and might safely have been run for an indefinite period. The objection to its being run was that in coupling it to other cars more care was required than if one end were not so low ; but with care it could be coupled safely, and had been so coupled regularly from day to day, and sometimes by the plaintiff himself. The danger, such as there was, would arise mainly from thoughtlessness ; but attention would be kept alive, and in a measure compelled, by the fact that defendant was receiving cars from other roads not corresponding in height with its own, so that it would be necessary for brakemen at all times to take notice of the relative heights when about to make a coupling.

But it is insisted for the plaintiff that he had a right to assume, when coupling cars belonging to the defendant, that they were all of the same height. And when it is replied that as regards this car the plaintiff well knew it was at one end lower than the other cars, the response is that the car having been reported for repairs, the plaintiff had a right to assume that defendant had performed its duty and repaired the car before bringing it again into use.

But what is unquestionable in this case is that the trouble with this car was such that plaintiff could not possibly have failed to observe it, had he made use of his eyesight at the time. Five or six inches difference in the height of draw-beams to cars is very considerable; and one would think that if a car was that much below the average its lowness must be noticed, even if it stood alone. But it must neces-

sarily be noticed when the cars come together, if the brakeman directs his attention to the point of meeting. In this case the plaintiff was not thus directing his attention ; he was standing with his back to the cars as they came down, and his eyes, for any use they were to him for the purposes of protection, might as well have been closed. It seems plain that if defendant was wanting in due care in continuing the use of the car on its line, plaintiff was at least equally wanting in care in thus exposing himself to a risk against which the ordinary use of his eyesight would have protected him.

Somewhat similar cases have been decided by this Court before, and plaintiff undertakes to distinguish them. *Fort Wayne &c. Ry. Co. v. Gildersleeve* 33 Mich. 133, was much like the present case in its facts; but it did not appear that complaint was made of the car to the company or its superintendent ; and this fact is supposed to distinguish that case from the present, in which there is some evidence that complaint was made to the proper officer. But, on the ground of want of care in the plaintiff himself, the cases cannot be distinguished, if they can on other grounds, which is doubtful. *Smith v. Potter* 46 Mich. 258, differs from this case in the fact that the car from which the injury proceeded came from another road. The same may be said of *Michigan Cent. R. Co. v. Smithson* 45 Mich. 212, but not of *Botsford v. Railroad Co.* 33 Mich. 256, which was held to be ruled by the *Gildersleeve Case.* And we also think *Davis v. Railroad Co.* 20 Mich. 105; *Michigan Cent. R. Co. v. Austin* 40 Mich. 247 ; *Day v. Toledo &c. R. Co.* 42 Mich. 524 ; and *Hathaway v. Railroad Co.* 51 Mich. 253, are all in point, and all sustain the conclusion of the circuit judge.

The judgment must be affirmed.

CAMPBELL and CHAMPLIN, JJ. concurred.

SHERWOOD, J. In this case the alleged negligence of the plaintiff in not ascertaining or knowing of the defective machinery or cars was a question for the jury, and they should have been permitted to pass upon it. A new trial should be granted.