CHAPMAN *v.* PERE MARQUETTE RAILROAD CO.

RAILROADS—INJURY TO EMPLOYÉ—SAFE APPLIANCES—CONTRIBU-
TORY NEGLIGENCE—DIRECTION OF VERDICT.

> A railroad brakeman was injured while operating a lever used
> in connection with a semaphore signal. It was a cold night.
> He had a lantern in his left hand. He stooped over, and
> with his right hand drew the pin which held the lever down.
> When the pin was pulled, the lever flew up, and struck him
> on the head. If he had put his foot or hand on the lever, the
> accident would not have happened. It was his claim that
> the upper wire of the device was unnecessarily taut. *Held,*
> error to refuse to direct a verdict for defendant, the appliance
> being reasonably safe, and the brakeman not having used
> proper care.

Error to Saginaw; Beach, J. Submitted January 6,
1903. (Docket No. 6.) Decided May 29, 1903.

Case by Claude H. Chapman against the Pere Marquette
Railroad Company for personal injuries. From a judg-
ment for plaintiff, defendant brings error. Reversed.

*Frederick W. Stevens* (*Charles McPherson,* of coun-
sel), for appellant.

*James H. Davitt,* for appellee.

MOORE, J. Plaintiff was a brakeman on the Pere
Marquette Railroad, and a verdict was rendered in his
favor for injuries received while operating a lever used in
connection with a semaphore signal in the Saginaw yards.
The case is brought here by writ of error by the defend-
ant. Its claim is the court should have directed a verdict
in its favor.

At the south end of the Saginaw yards of the Pere Mar-
quette Railroad is a semaphore signal for the purpose of
preventing collisions between the trains and switch engines

which pass that point and operate in that vicinity. No train can pass into the Saginaw yards from the south except when this semaphore signal shows a clear main track. No train can pass from the switching yard to the main line without the semaphore signal being so set as to warn other trains. The movement of a train from the main line to the side tracks also requires the movement of the signal. The semaphore signal is operated by a lever situated on the ground in the yard about 1,200 feet from the signal, the two being connected by two wires running along the tracks. One of the wires pulls the semaphore to "clear" and the other pulls it to the semaphore post. At the lever the wires are attached to a chain, which passes over a wheel to which the lever is attached. The lever moves in a half circle, drawing on one wire, while the other at the same time is slackened. When down, it is held in place by an iron pin passing through two jaws on each side of the lever, in holes just above the lever. This pin must be removed before the lever is operated. Photographs of the lever aid in understanding its operation and construction. The lever not only operates the semaphore signal about 1,200 feet away, but its operation also locks or unlocks the switch near it. A rod from the lever runs to and locks the switch, thus preventing a brakeman from opening the switch until he has first changed the semaphore by the use of this lever, thus warning other trains that the main line is not clear. The head brakeman (on a train entering Saginaw from the south, and desiring to pass from the main line to the yard tracks) goes to this lever, removes the pin which holds it down, turns the lever clear over, thereby setting the semaphore signal, and by the same movement unlocking the switch close by the lever. He then turns the switch, his train passes in, and, when it has entirely passed, the rear brakeman closes the switch, and, with the lever, resets the semaphore signal to "clear."

Plaintiff was head brakeman on a freight train from Port Huron to Saginaw, which entered the Saginaw

yards about 3 a. m. on March 6, 1901. It became his duty to change the lever so as to shift the signal and turn the switch, to enable his train to cross over from the main track to the yard. It was a cold night. He had his lantern in his left hand. He stooped over, and with his right hand drew the pin which held the lever down. He did not put his hand or his foot on the lever to prevent it from flying up. When the pin was pulled, the lever flew up, struck the plaintiff on the side of the head, and hurt him severely. He had not operated this lever before.

It is the claim of the plaintiff that the upper wire was drawn unnecessarily taut, making it dangerous to operate the lever, and he gave testimony tending to show that two or three other levers of a similar character, one of which was in the same yard, did not fly up when operated in the way he operated this one. It was the claim of defendant that the operation of the semaphore required there should not be too much slack in the wires running to it; that the other levers were differently situated from this one; that the way to operate the lever was to grasp the end of it with the hand, and then release the pin; and that, if the plaintiff had properly operated it, he would not have been hurt.

The testimony and the photographs show the mechanism was a 'simple one. The lever was held in place by a pin. When the pin was withdrawn, the lever was moved by the hand nearly half way around the arc circle, and held in place by a pin put over it. All the testimony, including that of plaintiff, discloses that, if plaintiff had put his foot or his knee or his hand upon the top of the lever before withdrawing the pin, the accident would not have happened. We think it clear the appliance was reasonably safe, and that, if plaintiff had exercised such care as is due from an employé to his employer, the injury would not have occurred. See *Brewer* v. *Railway Co.*, 56 Mich. 620 (23 N. W. 440); *Lamotte* v. *Boyce*, 105 Mich. 545 (63 N. W. 517), and cases cited therein. Under the facts dis-

closed by the record, a verdict should have been directed in favor of defendant.

Judgment is reversed, and new trial ordered.

The other Justices concurred.