The San Antonio & Aransas Pass Railway Company v. Mary E. Wallace et al.

No. 2834.

Negligence—Damages.—When an employe of a railway company places himself, in disregard and violation of a rule of the company which is known to him, in a position which is dangerous, and personal injury to himself results which is caused in whole or in part by such violation of the rule, no damages can be recovered for the injury.

Appeal from Colorado. Tried below before Hon. Geo. McCormick. The opinion states the case.

S. C. Patton, for appellant.—The disobedience of a reasonable rule or order of the master or employer by the servant or employe, resulting in injury to the servant, is contributory negligence on the part of the servant which will prevent his recovery from the master, without regard to the question of the servant's knowledge or means of knowledge of the danger incident to the act of disobedience; and in case of his death the same rule applies in case of relatives suing. Pilkinton v. Railway, 70 Texas, 226.

*Foard, Thompson & Townsend,* for appellees.

HOBBY, Judge.—Frank Wallace, while employed as conductor on a freight train of appellant, was knocked off of the top of a box car on which he was standing by a scaffold suspended from the upper portion of a truss bridge spanning the Colorado River, and on which appellant's railroad was constructed and crossed said stream. From the injuries then received Wallace died, and this suit is the result, in which the plaintiffs (appellees here) recovered damages in the sum of $15,000, apportioned among them as follows: To each of the deceased's seven surviving children, $1750; to his surviving widow, $2750. The defendant appeals, and as ground for a reversal of the judgment assigns several errors, all of which it may not, we think, be essential to discuss. The bridge above referred to, although newly constructed, had been in use for some time; and appellant's trains had been crossing said river on it as the business of its road demanded. But the arches on the east span, it appears, were not completed. For the purpose of completing them a scaffold was used. This scaffold was suspended by ropes and hung on blocks and tackle, so, in the language of one of the witnesses, "it could be raised or lowered so it would not strike a smoke stack or knock anybody off."

On the 21st day of July, 1887, at about 2 o'clock a. m., the train of which Wallace was conductor and in charge approached the bridge from the west, going east, and stopped on the west side of the bridge and river to discharge a small quantity of freight. It consisted of the engine (which, when stopped, was standing on the west end of the bridge), about five box and eight flat cars, and the caboose. When the freight was put off Wallace, who was standing near the track, signaled the engineer to proceed, in obedience to which signal the train moved slowly across the river on the bridge at a rate of about two or three miles an hour.

From the point where Wallace stood to the caboose, a distance of about forty yards along the side of the track, it was impassable, says a witness, in the night time, by reason of the bridge timber, ties, etc., scattered about. Wallace caught the ladder of the second or third box car from the engine as it passed by, and climbed up on the top of the car. When this car on which Wallace stood passed under the scaffold suspended as before explained, he was knocked off by it, his leg or foot crushed, and other injuries sustained by him, resulting in his death a short time after reaching Eagle Lake station.

There was evidence that he could have boarded the flat cars and walked without danger to the caboose on them. There was testimony to the effect that it was customary and sometimes the duty of the conductor of a freight train to stand on the top of a box car when necessary to assist in braking, signaling, or coupling, or when switching at stations. Rule 26 of the company, which it was shown had been furnished to Wallace and

his attention called to, prohibited all persons from standing on top of covered cars whilst passing through truss bridges. This bridge belonged to that class. Rule 28 strictly forbade all persons from boarding engines or cars while in motion, and "under no circumstances are they to stand on the track and board engines or cars when the same are approaching them." Wallace had been in the service of the company for some time, and a conductor of a freight train for about two weeks, and had crossed on this bridge often.

The scaffold had been raised the day before when the hands quit work on the bridge, but not as high as it could have been. When the boss' attention was called to that fact he said it was high enough. It could have been raised three or four feet higher. It was high enough not to knock a man off of a box car if he was sitting down. For the three days the scaffold had been on that end of the bridge the orders were to raise it at night so as to be clear of smoke stacks and brakes. Our view of the case makes it unnecessary to recapitulate further the testimony.

Appellant's third and eighth assignments raise the question of the right of the appellees to recover under facts showing that the injuries resulting in Wallace's death were caused by his own negligence contributing thereto by reason of his disobedience of a reasonable rule of appellant which was known to him.

Whether the scaffold was as high as it might have been, or whether there was negligence in the appellant under the circumstances in not raising it higher, there can be no doubt, we think, that the proof shows that the position occupied by Wallace on top of the box or covered car was an act of negligence on his part without which the injuries could not have been inflicted which caused his death.

It is equally clear, in our opinion, that he was there in direct violation of a rule of the company which it is shown he was furnished with and was known to him. The argument in reply to this is, that there was evidence to the effect that it was customary and sometimes the duty of a conductor to be on top of a box car. This may be true. But the evidence of the circumstances under which a conductor might have claimed that it was his duty to be there showed that these were when it became necessary to assist in braking, coupling, and signaling, or in making switches at stations. Neither of these conditions existed at the time he was on the box car on the bridge. And it can not be fairly claimed that the facts in this case tend to show that at the time of the injuries sustained by Wallace his duties required his presence on the top of the car.

It was further shown by the proof, we think, that he was violating rule 28 of the company above referred to in boarding the car under the circumstances stated by the witnesses. It is contended, however, by appellee that the "piling, ties, timber," etc., scattered along the track rendered it impassable, and Wallace could not in the night time go back

to and board the caboose.    But it is on the other hand stated by a wit-
ness in a position to know, that Wallace could have boarded one of the
flat cars in rear of the box cars, and could have walked without danger
on them to the caboose.    It is not important to determine whether this
be true or not.    But it was certainly his duty and manifestly within his
power to have had the caboose stopped when it reached him, and then to
have boarded it.    It was shown that the train had ample time to make
the next station, and no good reason was shown for Wallace to mount
the box car.

The legal principle applicable to the facts of this case we believe to be
substantially as follows:    That the mere fact alone that the injuries were
inflicted while the employe was acting in disobedience of known rules
would not relieve the master of liability.    But if the violation in whole
or in part of such rules was the cause of the accident or injury, it would
prevent a recovery by him.    Railway v. Thomas, 51 Miss., 640; Wood on
Mast. and Serv., sec. 399, and cases cited.

Under the facts of this case this rule, in our opinion, presents an in-
surmountable barrier to a recovery by appellees.    We do not deem it im-
portant to discuss the other assignments, because if the views above
expressed be correct it is immaterial whether they are tenable or otherwise.
The judgment, we think, should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 25, 1890.