GEORGE A. BENNETT *vs.* NORTHERN PACIFIC RAILROAD COMPANY.

Opinion filed Dec. 17th, 1892.

**Injury to Employee—Question of Negligence for Jury.**

Plaintiff, a switchman, in the employ of defendant, was directed by the foreman of the switching crew to assist him in coupling an engine to a flat car. According to some of the evidence the drawhead of the car sank flush with the end of the car when the engine struck the car, and plaintiff was caught between the car and engine, and injured. The evidence showed that the play of a drawbar was from 1 to 4 inches, and that this drawbar was 10 or 12 inches long. *Held*, sufficient evidence of defendant's negligence to require the submission of that question to a jury.

**Contributory Negligence—What is Not.**

The track on which the coupling was made was a curved one, and plaintiff was standing on the footboard of the engine, on the inside of the curve, at the time he was injured. There was no evidence as to the degree of the curve. *Held*, that he was not negligent, as a matter of law, in remaining there to help in making the coupling.

**Evidence Applied.**

Nor was he guilty of contributory negligence, as a matter of law, in standing in that place, notwithstanding the unusual shortness of the drawbar of the engine and of the drawbar of the car, the former projecting 6 inches beyond a rim on the rear of the engine, and the latter being, according to some of the evidence, 12 inches long, the evidence showing that the usual play to a drawbar is from 1 to 4 inches; there being no play to the drawbar on the engine, and it being undisputed that the engine approached the car slowly to make the coupling, so that the amount of slack taken up would be but little, if everything was in proper order.

**Standing on Footboard of Engine.**

Neither was it contributory negligence, as a matter of law, for him to remain on the footboard, instead of going ahead, and setting the pin, and then stepping outside the track before the engine and car came together.

Appeal from District Court, Stutsman County; *Rose,* J.

Action for personal injuries by Geo. A. Bennett against the Northern Pacific Railroad Company. Defendant had judgment, and plaintiff appeals.

Reversed.

*S. L. Glaspell,* for appellant.

*Ball & Watson,* for respondent.

Corliss, C. J. . This is the second time this case has been before us. On the former appeal the opinion is reported in 2 N. D. 112; 49 N. W. Rep. 408. On the second trial the court directed the jury to find for the defendant. Judgment was entered on the verdict so directed. From that judgment this appeal is taken. Should the case have been submitted to the jury? It is necessary to review the evidence, as the facts seem to be somewhat different from those which appeared from the record on the former appeal. The plaintiff was injured while assisting in coupling an engine to a flat car, known as a "Union Tank Line Car.' The car was standing on a switch. Plaintiff was directed by Dennis Shields, the foreman of the switching crew of which plaintiff was a member, to go with him to couple onto this car, and to transfer it to another track. Plaintiff turned the switch, and stepped upon the end board of the engine where Shields was standing. The engine then started eastward to back down to this car, which was only a few rods distant,—about 60 or 70 feet. The switch was a curved one. How great was the curve is not disclosed by evidence on this record. Plaintiff appears to have offered to prove that the curve was slight, but this offer was objected to, and the objection sustained by the court. Shields stood on the end board on the outside of the curve, while plaintiff stood on the end board on the inside of the curve. According to plaintiff's testimony he was looking for a pin with which to make the coupling as the engine approached the car. Finding none lying on the drawhead of the car, he turned to the tool box in the rear end of the tank of the engine to look for one there. Discovering none there he next cast his eyes upon the ground to find one, and was still unsuccessful. Finally he espied one on the platform of the car near the end. The engine, he says, was at that time about twenty feet from the car, and moving slowly, about 2½ miles an hour. He leaned over and grasped the pin, and was just in the act of setting it when he was caught between the end of the car and the end of the engine, and one of his pelvic bones crushed. The injury appears to be permanent and quite serious.

There is a marked difference between the evidence on this and on the former trial so far as the length of the drawbar of this car and the circumstances immediately surrounding the accident are concerned. On the former appeal we held that plaintiff was guilty of contributory negligence, as a matter of law, because the evidence disclosed the fact that this drawbar projected less than five inches from the end of the car before the slack was taken up. We held that, as the plaintiff slowly approached the car, he could not have failed to have noticed that the drawbar was extremely short had he used proper care; but it now appears from some of the evidence that this drawbar projected 10 or 12 inches beyond the end of the car. We do not think that it can be said, under such evidence, that as a matter of law, the plaintiff was negligent in not apprehending peril; nor is it evident that plaintiff would have been injured at all had the play of this drawbar been only normal; *i. e.* from one to four inches. The engine was moving so slowly that its momentum when it struck the car must have been very slight. Shields, the foreman, says that the engine barely touched the car when they came together. The amount of slack taken up under these circumstances would be but little if everything was in proper condition. We think that the plaintiff had a right to assume that everything was all right, under the circumstances. It is true that, under the rule referred to in the opinion on the former appeal, and which was introduced in evidence on the second trial, the plaintiff was under obligation to look at the coupling apparatus to see if it was all right before making the coupling; but this does not involve a critical examination of the apparatus. The plaintiff testified that, as he approached the car, he looked at the drawbar, and did not see anything the matter with it. Indeed, it is undisputed that the drawbar and drawhead were apparently in good order; and if, there was anything the matter with them it is fair to assume that it was some obscure defect as in the spring, the follower plate, or some other similar place, the discovery of which would have required a very careful examination. It was for the jury to say whether plaintiff did all

the rule required of him under the evidence on this appeal. We are left in dark as to the precise difficulty with the drawbar, but, if the testimony of the plaintiff is entitled to credence,—and that is a question for the jury,—then there is evidence to warrant a finding that there was something wrong with some part of this coupling apparatus. The plaintiff swore that, when the engine struck the car, it pushed back the drawhead of the car almost, if not quite flush with the end sill. He said: "When the engine struck the draft iron it sunk in. It sunk in under the car. It might have been a foot. It could not have been more than flush with the end of the car, or what would be the car frame." That there should be such play to the drawbar from so slight an impact of the engine against it is certainly evidence from which the jury might have said that there was some defect, which a proper inspection of the car would have disclosed. It is urged that there is evidence that the car was inspected. Assuming this to be so, still it may be that the defendant had not discharged its full duty to plaintiff. It owed him the duty of making a careful inspection, and it was for the jury to say whether the sinking in of this drawhead flush with the end of the car, should they believe plaintiff's testimony in this particular, was not evidence that this inspection, if made at all, was not made in a proper manner. If plaintiff's testimony is true, the drawbar, instead of having a play of from 1 to 4 inches, had a play of 10 or 12 inches,—the full length it projected beyond the car. It seems to be conceded that the drawbar could not have sunk in so far had there been no defect in the apparatus. It is true that there was evidence tending to show that everything was in proper order, but this conflict it is the province of a jury to settle. On the former appeal we said: "To fail to discover, under this circumstances, that these drawbars [i. e. those of the engine and of the car] were only about one-third the usual length, must be negligence," etc. It now appears that the drawbar on the engine was 8 inches long, and that, that on the car was 10 or 12 inches long. We cannot, under these new facts, say, as a matter of law, that the plaintiff was negligent

in not knowing that there was danger of his being injured in making the coupling should he remain on the footboard; nor is there any evidence that he would have been hurt had there been no undue play to the drawbar of the car. The jury might, under the evidence, have found that this drawbar projected 12 inches beyond the end of the car; that the plaintiff was justified in assuming that only a little of the slack would be taken up in view of the very slow approach of the engine to the car; and it is undisputed that the drawbar of the engine projected at least 6 inches beyond the 2-inch rim around the rear end of the engine, and that there was no slack in this drawbar which could be taken up. This would have left a standing place of about 16 inches, assuming that the spring of the drawbar of the car yielded two inches. This would have afforded plaintiff ample space in which to stand with safety, under the evidence on this record. It is true that plaintiff was bound to know that this space would be diminished somewhat by reason of his being on the inside of the curve, but there is no evidence in this case showing the extent of the curve, or how much closer together the ends of the car and engine would come on the inside than on the outside of the curve. The curve may have been so slight as to make the difference barely appreciable, especially at the point where plaintiff must have stood, quite near the center, in order to secure the pin, and drop it into the opening in the drawhead of the car.

Whether plaintiff ought to have gone ahead and set the pin, and stepped to one side before the engine and car came together, is also a question for the jury. Negligence and contributory negligence are generally matters of fact, and we think that in this case, under the present record, they should have been both submitted to the jury, under proper instructions. Radical changes in testimony excite more or less suspicion, but it is not for this court to say whether the plaintiff swore falsely on the second trial; nor was it the province of the trial court to settle this matter of fact either for or against the plaintiff. The judgment is reversed, and a new trial ordered. All concur.