LARCENY ⬤⟿51(1)—EVIDENCE—POSSESSION OF STOLEN PROPERTY BY ANOTHER.

In prosecution for theft, *held* error to admit evidence that articles similar to those stolen, but not clearly identified as the articles stolen, were found in the possession of another person the day after accused's arrest, with no testimony showing any acting together between this person and accused.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. §§ 144, 146; Dec. Dig. ⬤⟿51(1).]

Appeal from Lavaca County Court; P. H. Green, Judge.

George Clark was convicted of theft of personal property, and appeals. Reversed and remanded.

Marcus Schwartz, of Hallettsville, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant was convicted of the theft of one horse collar of the value of $2.50 and one pair of breast chains of the value of $1.25 from the owner, Cervenka. Cervenka says that he lost the things set out and other things of the same sort at the same time. It is claimed appellant was found in possession of a collar and chain, and that Peters, living in a different section of the county some miles away, was found in possession of some of the property of Cervenka. There was no connection shown between Peters and appellant. They were not shown to have been together. The sheriff went to Peters' house, and found a large collar in a cane patch; he also found a breast chain on Peters' cultivator, which he was then using. These were similar to those found at the home of the defendant. He says he brought the chain and collar to town, and a few days later Cervenka came to town and identified same as his property. Appellant objected to the introduction of this testimony for various reasons. There was no testimony introduced to connect the defendant with the theft of that collar and breast chain, and the testimony was incompetent and irrelevant, and tended to prejudice the jury against the defendant by showing other petty thefts by other people. These objections were overruled, and the testimony was permitted to go to the jury. The bill of exceptions shows the sheriff stated the next day (meaning the day after he arrested the defendant), he went to the home of Joe Peters, southwest of town, and found this large collar in Peters' cane patch, and breast chain on the cultivator. This occurred in the absence of defendant. There is no testimony to show any acting together between the parties, and, outside of the identification by Cervenka, there is nothing to indicate that Cervenka lost this collar and chain. The testimony is weak on the identification, and is made to depend largely upon the fact that the collar had a hole in the strap, which Cervenka says was made by him with a buckle pin. He also says there are a great many collars in the country just like his, with holes, made, perhaps, in the same way. The testimony as to Peters was about a different matter, and property found in his possession was in no way connected with appellant. The evidence showed appellant lived northwest and Peters lived southwest. These matters, occurring as they did, could not be used as evidence against defendant, and ought not to have been permitted to go to the jury. There is evidence to show that defendant and Hafernik were seen together driving in a wagon on a public road by parties in an automobile. They were seen by the witness Dufner some miles west of Hallettsville, slowly driving in a wagon on a public road going in the direction of Shiner. Dufner says, after going several miles up the road and near Shiner, he and Dornak stopped on the roadside, waiting for his son, Dr. Dufner, and while there defendant and Hafernik passed. The sheriff testified he knew defendant and Cervenka; that Cervenka lives about three miles west of town, on the main road leading from Hallettsville to Shiner; the defendant lives between Shiner and Moulton. The next day he went to defendant's and got a collar and chain, and the next day went to Joe Peters' southwest of town and found a large collar in Peters' cane patch, which was claimed by Cervenka. The state does not seek to connect Peters with appellant.

The judgment is reversed, and the cause remanded.

---

TEXAS & PAC. RY. CO. v. ELLIOTT.* (No. 621.)

(Court of Civil Appeals of Texas. El Paso. Nov. 2, 1916. Rehearing Denied Nov. 28, 1916.)

1. MASTER AND SERVANT ⬤⟿258(18)—INJURIES TO SERVANT—PLEADING.

In a servant's action against a railroad for personal injuries, a statement in plaintiff's petition that he was acting under the orders of defendant's car inspector in going between cars to make repairs, was not a charge of liability because of the fact that defendant's car inspector ordered plaintiff to go between the cars.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 833; Dec. Dig. ⬤⟿258(18).]

2. MASTER AND SERVANT ⬤⟿270(15)—INJURIES TO SERVANT—EVIDENCE—ADMISSIBILITY.

In a servant's action against a railroad for personal injuries received while between two cars repairing a handhold, evidence that it was customary for defendant's car inspector to exercise control over repairers, and that he ordered plaintiff to go between the cars at the time of his injuries, was a part of the res gestæ

and admissible, as an explanation of how plaintiff came to be in the place of danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 925; Dec. Dig. ☞270(15).]

3. MASTER AND SERVANT ☞270(15)—INJURIES TO SERVANT—PROOF.

In a servant's action against a railroad for personal injuries received while between two cars engaged in repair work, where the pleadings raised the issue whether a written rule of the company requiring a flag to be stationed as a warning to switching crews, etc., had been abandoned, or abrogated by nonobservance, evidence that a custom prevailed in the yards of defendant of doing light repair work without placing flags for the protection of those doing the work was admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 925; Dec. Dig. ☞270(15).]

4. MASTER AND SERVANT ☞274(9)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE—ADMISSIBILITY.

In a servant's action against a railroad for personal injuries received while between two cars engaged in repair work, a written rule of the company requiring a flag to be stationed in such cases was shown, evidence that a custom prevailed in defendant's yards of doing light repair work without placing flags for protection of those doing the work was admissible on the question of contributory negligence, since the mere fact alone that injuries were inflicted while an employé was acting in disobedience of known rules would not relieve the master of liability.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 949; Dec. Dig. ☞274(9).]

5. DAMAGES ☞159(3) — PLEADING AND PROOF—PERSONAL INJURY.

Under an allegation in the petition that plaintiff's hand was rendered useless, evidence by plaintiff that his earning capacity had been diminished and so materially impaired that he could not engage either in the work of car repairer or in any other manual labor, was admissible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 440–443; Dec. Dig. ☞159(3).]

6. WITNESSES ☞154—CONVERSATIONS WITH PERSON SINCE DECEASED—CORPORATIONS.

The statutory rule touching testimony of conversations with persons since deceased does not apply where the person deceased was the superintendent of a corporation.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 661; Dec. Dig. ☞154.]

7. WITNESSES ☞154—CONVERSATIONS WITH PERSON SINCE DECEASED — CORPORATIONS.

In a servant's action against a railroad for injuries, received while making repairs between two cars, plaintiff's testimony that he had applied to defendant's superintendent for work, and that the superintendent crushed a letter given him by plaintiff and threw it down, asking him what further action he was going to take, not being an attempt to bind defendant because of its contents, but simply to show that plaintiff made an effort to take up his work and was refused, was admissible, although the superintendent was dead at the time of the trial.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 661; Dec. Dig. ☞154.]

8. DAMAGES ☞132(8)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

Where plaintiff was 46 years old at the time of the injury and earning about $100 per month at his trade, was uneducated, and two of his fingers and the palm of his hand were permanently injured, stiffened, etc., a verdict for $2,610 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 379; Dec. Dig. ☞132(8).]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Hugh H. Elliott against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

S. N. Russell, of El Paso, for appellant. Lea, McGrady & Thomason and Winter, McBroom & Scott, all of El Paso, for appellee.

HARPER, C. J. The Texas & Pacific Railway Company has appealed from a judgment in favor of Hugh H. Elliott for $2,610, as damages for injuries to his hand.

Appellee charged the following acts of negligence upon the part of the company: That he was in the employ of the railway company as a car repairer. That it was especially his duty to do light repair work on cars in the railway yards. That as such he was directed by the car inspector to repair or replace a defective handhold in a car belonging to and in the possession of defendant. That acting upon said order and the rules of the company, he went in between the cars for said purpose. That while engaged in so repairing said handhold, an engine was by one of defendant's employés run in against the cars, pushed them together, and thereby his right hand was caught between the drawheads and couplers, and thereby injured. That it was the duty of the agents of the company—the car inspector, switchman, and other members of the switching crew—to keep a lookout for plaintiff's safety and protect him, and to warn him of the approach of the engine, which they failed to do.

Defendant answered by general denial, and specially that the plaintiff failed to take proper precautions to protect himself in that he failed to put a flag at the place required by the rules of the company as notice to operators of the switch engine that he was to be engaged in repair work between cars of the train in question; that plaintiff was warned that the cars were about to be coupled, but that he, without heeding said warning and without taking the precautions above described, required by the company, for his own protection, negligently entered between the cars and carelessly placed his hand upon the drawheads of the cars. He therefore assumed the risk, and was guilty of contributory negligence.

By supplemental petition, plaintiff answers that he was acting under the orders of defendant's car inspector; denied that there was any rule requiring him to place a flag; that if there was, that it was not in force; that there was in force a rule which applied

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to emergency repairs on line tracks such as that in question; that if there was such a rule intended to apply to instance in question that it had been, with the knowledge and consent of defendants, abrogated; further says that at the time he went between the cars to do the repair work, defendant's car inspector and switchman, who had control over the engine, were present and knew that he was between the cars, so it became their duty to keep watch for plaintiff's safety, which they negligently failed to do.

The first assignment is abandoned.

The second is to the admission of the testimony of plaintiff that defendant's car inspector had ordered him to go between the cars at the time of his injuries for the reason that the testimony at that time did not show that he had any control over plaintiff.

The third complains of the admission of plaintiff's testimony; that it was customary for the car inspector to exercise control over car repairers for the reason that there was no evidence that such usage or custom was known to the defendant, nor that it had prevailed in the yards so long that the company is charged with knowledge, etc.

[1, 2] We think it apparent from the pleadings quoted above that no liability for negligence is charged to the company because of the fact that the car inspector ordered or directed plaintiff to go in between the cars to repair or replace the handhold, but the negligence charged is in the fact of failure of said inspector and the switchman, etc., to keep a lookout for the coming of the switch engine and notify plaintiff so he could get out from between the cars, and the court's charge confines the jury to the latter. The statement in the pleading, the evidence to same effect complained of, amounts to no more than a statement of fact, a part of the res gestæ, and admissible as an explanation of how plaintiff came to be in the place of danger.

The sixth is:

"The court erred in permitting plaintiff to prove by his own testimony and that of others, over the objection of defendant, that the custom prevailed in the yards of defendant of doing light repair work, without placing up flags for the protection of those doing the work when the written rule of the company, which was offered in evidence, required the placing of flags in all cases without exception."

[3] The answer is that the defendant pleaded the rule of the company requiring a flag to be stationed as a warning to switching crews, etc., that workmen, such as car repairers, were in a place of danger, and that plaintiff, appellee, pleaded that the rule, in such emergency cases as the one here presented, had been abandoned by the act on the part of the defendant company of permitting for a long period of time its employés to do their work without its observance. Therefore it became a question of fact as to whether the rule had been abandoned or abrogated by the company permitting its nonobservance for such a length of time; so upon this issue the evidence was admissible. Railway v. Scott, 71 Tex. 709, 10 S. W. 298, 10 Am. St. Rep. 804.

[4] And in so far as the showing made of appellant in his brief is concerned, the evidence was admissible upon the question of contributory negligence. Railway v. Winkler, 179 S. W. 696. For "the mere fact alone that the injuries were inflicted while the employé was acting in disobedience of known rules would not relieve the master of liability." Railway Co. v. Wallace, 76 Tex. 636, 13 S. W. 565.

[5] The fourth is:

"The court erred in permitting plaintiff to state that his earning capacity had been so materially impaired that he could not engage either in the work of car repairer or in any other employment which involved manual labor, for the reason that in so stating the plaintiff was permitted to cover a wider scope than the pleadings in the case would authorize and justify, in that the allegations of plaintiff's petition were that by reason of his injuries, he had become incapacitated from ever engaging again in the work of a car repairer, in which business he had been engaged for years and which was his trade and occupation, and that his hand was almost destroyed; that at the time of said injuries he was earning about $100 per month as a car repairer, and his earning capacity is greatly diminished so that he cannot earn more than one-third as much as he could before his injury, for the remainder of his life; and the said petition did not allege that he was incapacitated from engaging in any business that would involve manual labor, other than that of car repairer."

If plaintiff's physical disability on account of the injuries inflicted did not incapacitate him to the extent testified to by him, it was defensive matter which should have been met by proof. The allegation in plaintiff's petition that his hand was rendered useless was sufficient to authorize the proof of diminished capacity. Railway Co. v. Butcher, 98 Tex. 462, 84 S. W. 1052.

The fifth is that it was error to permit plaintiff to testify:

"After I was discharged from the hospital, I asked Mr. Smith, superintendent of the Texas & Pacific Railway Company, for work again; he was the only man who had authority to employ me at that time. I was refused work. The reason I quit applying to him to get a job was because I gave him a letter that he crushed up in his hand and threw it down, and asked me what further action I was going to take in this suit."

The reasons given for the objection to this testimony are that the testimony showed that Mr. Smith was dead at the time of the trial, and to admit such testimony placed the defendants at the mercy of plaintiff, being no way to contradict it, etc.

[6, 7] This evidence was not objectionable for the reasons given. The statutory rule sought to be invoked does not apply to corporations. In the second place, it was not an attempt to bind the corporation on account of the matter about which this conversation related, but if it had any probative force relative to any matter involved in this

suit, it was simply that plaintiff made an effort to again take up his work as car repairer or inspector, and for some reason was refused. Bexar Bldg. & L. Ass'n v. Newman, 25 S. W. 461.

[8] The seventh is that the amount of damages awarded is manifestly excessive. We do not think so. Plaintiff was 46 years of age at the time of the injury, and earning about $100 per month at his trade, was uneducated, two of his fingers and the palm of his hand were permanently injured, stiffened, etc.

The assignments are therefore overruled, and cause affirmed.