## THE CENTRAL RAILROAD *vs.* SMITH.

76 209
122 118
123 94

1. In an action for damages on account of a personal injury, it is doubtful whether it was admissible to prove statements of the plaintiff, made some months after the accident, to show that he threatened that, if he did not get better, he would take his life, and that he contemplated suicide. But where the admissibility of evidence is doubtful, the rule in this state is to admit it, under proper instructions to the jury to consider its doubtful competency as a circumstance bearing upon its credibility in estimating the effect to be given to it.

2. The charge excepted to in relation to the negligence of the defendant, as an abstract proposition, was accurate and correct, and when taken in connection with the other instructions given to the jury, fairly submits the rule which would acquit the defendant of liability, namely, its freedom from negligence in the transaction, the want of ordinary care on the part of the plaintiff, by the exercise of which he could have avoided the consequences to himself, and the rule as to the measure of damages in cases of contributory negligence.

3. In an action against a railroad for damages on account of a personal injury, where the negligence of the defendant, if there was any at all, seems to have been but slight, and that of the plaintiff appears to have been greater, a verdict in favor of the plaintiff for $10,000 is not only flagrantly extravagant, but so excessive as to disclose either bias in his favor or prejudice against the defendant, or that the jury wholly mistook and misapprehended the instructions given to them by the court, and a new trial is required.

(*a.*) A party who makes an arrangement to be carried on a freight car impliedly agrees to accept and be satisfied with such accommodations, as regards carriages and seats, and places of entering and leaving the carriages, as may be found in the usual course of the business. If the cars, at the time of agreeing to his passage and taking his seat, are at a freight depot, he should be satisfied with such means of entering them as are provided for the loading of freight. If the cars are, at the time, standing on a part of the track, where there is no provision for landing or receiving either goods or passengers, he should be satisfied with such means and facilities as may casually be within his reach. The company is not bound in either case to make landings or any provision whatever for the reception or discharge of passengers where none are expected to be.

(*b.*) No opinion is expressed as to the facts of the case.

June 1, 1886.

v 76-14

Evidence. Railroads. Damages. Negligence. Verdict. Before Judge HARDEN. City Court of Savannah. July Term, 1885.

Reported in the decision.

LAWTON & CUNNINGHAM, for plaintiff in error.

J. R. SAUSSY, for defendant.

HALL, Justice.

The plaintiff recovered of the defendant ten thousand dollars damages, resulting, as he alleges, from an injury which was occasioned by the negligent conduct of its agent in conducting him from the freight depot of the company in Savannah to its passenger depot, whence he had access to the street, where he could obtain a conveyance to his lodgings. The court overruled a motion for a new trial made by the defendant upon the following grounds:

(1.) Because the verdict of the jury is contrary to law.

(2.) Because the verdict of the jury is contrary to the evidence.

(3.) Because the verdict of the jury is against the weight of evidence.

(4.) Because the verdict is excessive.

(5.) Because the court erred in charging the jury as follows: " Now, was the defendant negligent or not in this case? If the defendant was not negligent; if the defendant used all reasonable care and diligence in taking care of him; if all reasonable and proper care was used on the part of its employés to see that he got from the place where he was put out into the city, then the defendant would not be guilty of negligence—would not be liable; but if it did not, then it would be liable."

(6.) Because the court erred in admitting in evidence, over the objection of defendant, the following testimony

of one of the witnesses: "Indeed, he threatened that if he did not get better, he would take his life; he contemplated suicide."—The said statements referring to statements made by the plaintiff to the witness, and said statements being no part of the *res gestœ*, and made months after the accident referred to.

To the overruling of this motion, the defendant excepted, and these exceptions make the questions on which we are to pass:

1. At most, the competency of the evidence excepted to in the sixth ground of the motion was doubtful, but while this may be so, that is not sufficient of itself, as has been frequently decided, to exclude it from the consideration of the jury. This fact goes rather to its weight than its admissibility, and the jury should have been instructed to consider its doubtful competency as a circumstance bearing upon its credibility in estimating the effect to be given to it. Had the plaintiff's declarations been made in describing his sufferings to a person other than a physician, with whom he was consulting at the time, and whose treatment of his complaint he was endeavoring to avail himself of, there would perhaps have been more doubt, to employ the apt and forcible language used by counsel for the defendant, of their being " the baldest hearsay."

The general rule, as laid down by writers on evidence, is that "the representations by a sick person of the nature, symptoms and effects of the malady under which he is laboring at the time, are received as original evidence. If made to a medical attendant, they are of greater weight as evidence; but, made to any other person, they are not on that account to be rejected." 1 Greenleaf's Ev., §102. But this rule, particularly its latter branch, is to be very carefully guarded and restricted in its application, especially where it is apparent that the declarations constitute no part of the *res gestæ*, and may have been made for the purpose of promoting some ulterior scheme, as for the purpose of being used in evidence in a contemplated or pend-

ing lawsuit brought to recover damages for the injury from which the party insists he is suffering. The rule seems by some of the cases to be restricted to "exclamations of present pain or statements of present symptoms," and "all statements made by the sick person relating to past transactions, however closely they may be connected with the present sickness, and even (it is held in most states) though stating the cause of the sickness or injury, should be rejected, unless the statements are otherwise admissible as part of the *res gestæ.*" Cases cited in note (b) to §102 of Greenleaf's Ev. The authorities on this point are somewhat confused, and so inharmonious that it would be difficult, if not impossible, to connect them. In Barber *vs.* Merriam, 11 Allen (Mass.) R., 322, language is used which would seem to imply that the declarations were admissible as to past events when made to a physician for medical advice. It is said, however, "this is an *obiter dictum* in that case, and the general current of authority is contrary." *Ib.*

In view of the fact that the tendency of our later legislation is to admit rather than exclude evidence, especially in cases where its competency is doubtful, we cannot go so far as to say that this testimony should have been rejected; but we hold that, where doubt is cast by the circumstances attending the declarations, especially where they are made some time after the injury has been done, and where it may be probable that they have been made with a view to enhance the damages the declarant seeks to recover in any suit to be instituted or then pending, the jury should be directed to attach little if any weight at all to them as evidence. Since the party making the statements is a competent witness, there would seem less necessity for relying on such testimony, but considering the injurious effects that frequently flow from it, and speaking only for myself, I sincerely regret that the old rule, which excluded interested testimony from the jury, should have been abolished. Any good that may have

been effected by the change is more than counterbalanced by the facilities which it has afforded unscrupulous suitors to commit fraud upon the rights and property of their opponents, especially if such opponents are more conscientious in regarding the obligations of their oath to speak the truth, the whole truth and nothing but the truth. I speak only in a general way, and certainly do not intend any particular application of the remark to this more than to other cases that have arisen or may hereafter arise; all that I mean to assert is, that the tendency of such rules is generally hurtful to the highest interests of justice, and is promotive of wrong. While the better policy might be to reject rather than admit such evidence as that now under consideration, still the law is otherwise, and our duty is plain; we must follow its mandates, whether we agree with its policy or not.

2. The charge excepted to in the 5th ground of the motion, as an abstract proposition, is accurate and correct, and when taken in connection with the other instructions given to the jury (which come up with and make a part of the record), fairly submits the rules which would acquit the defendant of liability, viz., its freedom from negligence in the transaction, the want of ordinary care upon the part of the plaintiff, by the exercise of which he could have avoided the consequences to himself, and the rule as to the measure of damages in case of contributory negligence.

3. One thing, however, is apparent to us, that these instructions were not regarded as they should have been by the jury trying this case. Upon the undisputed facts, the verdict for ten thousand dollars, in a case where the negligence of the defendant, if there was any at all, seems to have been but slight, and that of the plaintiff appears to have been greater, is not only flagrantly extravagant, but so excessive as to disclose either bias in favor of the plaintiff, or prejudice to the defendant, or (as our charity inclines us to believe), that the jury wholly misstook and misapprehended the instructions given to them by the court.

The plaintiff took passage on the cab attached to the defendant's freight train, and was safely carried from the point at which he entered this car to his place of destina tion; he makes no complaint that he did not have all the accommodation and comfort while on the route that his contract entitled him to, or that the cab in which he rode was not carried to its usual place of stopping in the freight-yard of the defendant at Savannah; thus far it is conceded the contract was faithfully and fully performed, but he insists that it was the duty of the defendant to afford him the means of a safe exit from its freight-yard to the passenger depot, and that in this respect it was negligent. The law regulating the rights of passengers travelling on such trains, and the liabilities of railroad companies for a failure to accord them these rights, is nowhere, so far as we have been able to ascertain, more definitely and clearly laid down than in Murch vs. Concord R. R. Corporation, 29 New Hampshire R., 9, 42, quoted in Thompson's Carriers of Passengers, 235, in which the court says:

" The party who makes an arrangement to be carried on a baggage wagon or a freight car impliedly agrees to accept and be satisfied with such accommodations, as regards carriages and seats, *and places of entering and leaving the carriages*, as may be found in the usual course of the business. If the cars, at the time of his agreeing for his passage and taking his seat, are at a merchandise depot, he is to be satisfied with such means of entering the cars as are provided for rolling in the cask or box on which he is to be contented to take his seat, if nothing better offers. If the cars are at the time standing upon a part of the track where there is no provision *for landing or receiving either goods or passengers*, he is to be satisfied with such means and facilities as may casually be within his reach. The company, considered as owners of the road or as carriers, are not in either case *bound to make landings, or any provision whatever for the reception or discharge of passengers,* where none are expected to be. The duties and obliga-

tions of parties are to be construed reasonably with reference to the nature of their business. . . . . It would be of mischievous consequence to adopt a rule which would deprive the railroad companies of the power to accommodate those whose occupations compel them to use these undesirable modes of conveyance." (The italics are ours.)

When the cab had been stopped at its usual place in the yard, and before the defendant had been landed, it was discovered that the conductor had gone off and left the train, carrying with him his lantern, and that he had neglected to provide a light for the plaintiff to get from the cars or from the yard to the depot; and this is the sole negligence attributable to the defendant and from which it is alleged the injury, which is the subject of this suit, resulted. To this it is replied, that he alighted safely to the yard and was provided with a train hand, in place of the conductor, who took charge of and carried his luggage, and who undertook to act as his guide and see him safely to the depot; that he was directed to follow this guide, who was familiar with the locality; that instead of doing this, and without complaining of any obstacles to his locomotion, or asking the assistance or direction of the guide, who was a short distance ahead of him, and could have been easily consulted, he undertook to seek for himself an easier and less obstructed way than that on which he was walking; that the night was very dark; that he wandered off from the track on which he was walking some distance, and in so doing, he encountered a wall erected on the outer edge of the yard over an arch through which the public road or street from one part of the locality to another passed, that this wall was elevated some two feet above the track, was broad and smooth on the top, and from it he fell, a distance of ten feet, to the road below. That he was greatly shocked by the fall, and deprived of the power of locomotion, is not denied, but there is no evidence that he was otherwise injured; no bones were broken, no joints

were dislocated, no bruises were visible, there was not even an abrasion of the skin, He contends, however, that his nervous system was so affected by this fall as to occasion him intense suffering; that in consequence of it one of his testicles perished away; that it grew smaller all the time, and he considered it entirely lost; that in connection with it he suffered from involuntary seminal discharges, which were a constant drain upon his vital energies, occasioning great debility and rendering it impossible for him to pursue his accustomed avocation with his usual efficiency; that these injuries which resulted from this fall were permanent in their character and were incurable. In reply to this, the defendant contends that it showed that these effects to his nervous system were not solely attributable to his fall; that he had previously contracted the venereal disease in the form of gonorrhœa; that his other testicle had been swollen and enlarged from this disease; and that it may have occasioned the derangement to his nervous system, which he attributed to the fall; that it at least contributed to the damage with which he sought to make it chargeable. He asserted that at the time of this injury, he was cured of this disease; but, on the other hand, it was shown from his own confessions that he had made use of an instrument called Allen's "bougie," for the purpose of removing from his urethra the obstructions which it had caused; that instead of remedying this difficulty, the use of the instrument had aggravated it, and he avowed his purpose of bringing suit against its proprietors for the injury it had occasioned; that soon after he fell from the wall, he abandoned this purpose and avowed his determination to prosecute this action against the Central Railroad Company. A careful examination of this record leads to the conclusion that the foregoing is an accurate statement of the material facts deducible from the evidence had on the trial.

While, as a general rule, we will not interfere with the discretion of the lower court in granting or refusing a new

trial on the ground that the damages found are either in-adequate or excessive, any more readily than upon other grounds where the testimony is conflicting upon the questions involved, yet where it is apparent that the finding is so excessive as to lead us " to suspect bias or prejudice from such excess" (Code, §3067), or to "justify the infer-ence" on our part that the verdict was the result " of gross mistake or undue bias" (*Id.*, §2947; *Savannah, Florida & Western Railway vs. Harper and wife*, 70 *Ga.* 122 *et seq.*), we will not hesitate to interpose and control the discretion where it has been improperly exercised, as we think it was in this case, in denying the defendant another hearing. On one point in this case, there was no conflict of evidence, or at least none such as was apparent, and that was on the question of contributory negligence. The most that can be said in favor of this plaintiff is that the negligence complained of is attributable to both parties. There was certainly much more on his part than there was on the part of the defendant, and if entitled to recover damages at all, his recovery should have been diminished, not only in proportion to the amount of default attributable to him in going from the freight-yard to the depot, but also to the extent to which his injuries may have been occasioned by the previous disease contracted by his lascivious intercourse with abandoned women and his own unskillful treatment of that disease. Had this verdict been rendered in view of these considerations, its amount must, upon any fair computation and apportion-ment, have been greatly less than that returned. Code, §3034, and citations. See particularly *Georgia Railroad vs. Neely*, 56 *Ga.*, 540, 543, 544, where this subject of contributory negligence, with the rule for apportioning damages in such cases, is ably treated by Bleckley, J., and from which it follows that this court should feel authorized to control the discretion of the inferior court.

To guard against misapprehension, we desire to be understood as expressing no opinion whatever upon the other

questions arising in this case.    We do not undertake to
determine whether or not the defendant was in the exer-
cise of all ordinary and reasonable care and diligence, or
whether the plaintiff, in any measure, either expressly or
impliedly by his conduct, consented to the injury done,
or whether it was caused solely by his own negligence, or
whether, by the exercise of ordinary care, he could have
avoided the consequences to himself, although they might
have been caused by the defendant's negligence, or
whether it was. caused by disease contracted by his own
reprehensible indulgence and illicit intercouse with lewd
women, or by his fall from the wall on the edge of defend-
ant's freight-yard, or to what extent each of these causes
contributed to his injury.    These are all questions for the
jury, and with proper instructions from the court should.
be passed on by them without bias to one party or preju
dice against the other.    As the case is to be tried again,
it would be improper to influence the finding or its extent
for or against either of the parties by any such expression
of opinion on our part.

Judgment reversed.