(101 N. W. 907.)

---

HANNAH PULS v. THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF NORTH DAKOTA.

Opinion filed December 10, 1904.

**Life Insurance — False Representations in Application.**

> 1. In an application for insurance, the insured stated that he was not addicted to the habit of drinking intoxicating liquor, and had never drank immoderately. There was evidence that he sometimes drank intoxicating liquor, and on a few occasions appeared to be intoxicated. *Held,* that the evidence was not sufficient to sustain the allegation that the representations in the application were false, so as to require the submission of that question to the jury, in an action on the policy.

**Proofs of Death and Verdict of Coroner's Jury Have no Probative Force.**

2. Proofs of death and the verdict of the coroner's jury stated that the insured died from alcoholic poisoning, and were admitted in evidence without objection. *Held,* that they had no probative force, because they expressed a mere opinion, based on the same evidentiary facts as were before the trial jury, and the report of death was not prepared by or in behalf of the beneficiary, and hence was not in the nature of an admission by her.

**Payment of Dues by Financier of Local Lodge Upon Arrangement With Third Party Prevents Forfeiture of Policy.**

3. The insured was a member of a benevolent and fraternal insurance association, and, under the terms of the contract of insurance, he would forfeit his membership and insurance by failure to pay assessments and dues within the time fixed by the by-laws. The dues and assessments were regularly paid for him to the lodge by the financier of the local lodge, pursuant to an arrangement between the financier and a third person, who agreed to reimburse the financier for such payments. *Held,* that the insured had not forfeited his insurance, although the third person did not in fact reimburse the financier for such payments until after the death of the insured.

**Evidence as to Habits of Deceased.**

4. Testimony of person who, by their association with the insured, had an opportunity to observe his habits, that. they had seldom or never seen him drink or appear to be under the influence of liquor, was competent to show that he was not an habitual or immoderate drinker.

**Declaration of Deceased as to His Malady — Res Gestae.**

5. Declarations of a sick or injured person as to the nature, symptoms and effects of the disease or injury under which he is suffering at the time are competent evidence in an action wherein the nature and cause of the malady are in question.

**Same.**

6. Voluntary and spontaneous declarations of the deceased to those in attendance upon him as to the cause of his illness, due to poison, from which he was then suffering, and soon died, are admissible in evidence as part of the res gestæ, where the circumstances are such as to preclude the idea of premeditation or any motive for falsifying.

**Verdict Sustained.**

7. Evidence examined, and *held* to sustain the finding of the jury that the death of the insured was not caused by indulgence in intoxicating liquor.

*John Carmody, G. A. Bangs* and *Fred A. Kelley,* for appellant.

The officers of the subordinate lodges are the agents of the members thereof in the transaction of all official business required of them by the beneficiary rules, and are not the agents of the grand lodge. Graves v. M. W. A., 89 N. W. 6; Elder v. Grand Lodge A. O. U. W., 82 N. W. 987; Grand Lodge A. O. U. W. v. King, 38 N. E. 352.

The testimony of the witness Smith, that the deceased when sick said he had taken horse medicine, was incompetent and hearsay, made out of the hearing of the defendant, and no part of the res gestae, and intended to help plaintiff's case. Riley v. Riley, 9 N. D. 580, 84 N. W. 347; Scribner v. Adams, 73 Me. 541; Perry v. Roberts, 17 Mo. 36.

The fact that the collecting officer received assessments after they were due was not binding on defendant, he being the agent of the members of the subordinate lodge, and not of defendant. Graves v. M. W. A., 89 N. W. 6; Grand Lodge A. O. U. W. v. King, 38 N. E. 352; Elder v. Grand Lodge A. O. U. W., 82 N. W. 987.

An applicant for life insurance is bound by his representations in the application for a policy. Knudson v. Grand Council of N. W. Legion of Honor, 63 N. W. 911; Schmitt v. Supreme Tent of Maccabees, 73 N. W. 22; Hogness v. Supreme Council of Champions of Red Cross, 18 Pac. 125; Perine v. Grand Lodge A. O. U. W., 53 N. W. 367; Cobbs v. Covenant Mutual Ben. Ass'n, 10 L. R. A. 666.

The verdict of the coroner's jury that deceased came to his death by the continued use of alcoholic spirits as a beverage, the same being admitted without objection, is prima facie proof of the cause of his death. 1 Greenleaf, section 556; 1 Starkie, section 1009; Grand Lodge of Ill. v. Wieting, 48 N. W. 48; U. S. Life Ins. Co. v. Kielgast, 6 L. R. A. 65; Walther v. Mutual Ins. Co., 4 Pac. 413; Pyle v. Pyle, 41 N. E. 999.

The proofs of death were admitted in evidence without objection, and show that the decedent's death was caused by alcoholic poisoning and are prima facie evidence of the facts therein stated. Walther v. Mutual Life Ins. Co., 4 Pac. 413; Mut. Ben. Ins. Co. v. Newton, 22 Wall. 32, 22 L. Ed. 793; Modern Woodmen of Amer. v. Von Wold, 6 Kan. App. 231.

When a beneficiary certificate was issued, upon representations that the deceased was not addicted to the use of intoxicating

liquors, if he was, then plaintiff cannot recover. McVey v. A. O. U. W., 20 Atl. 873; Meacham v. N. Y. State Mut. Ben. Ass'n, 24 N. E. 283; Van Valkenburg v. Ins. Co., 70 N. Y. 605; Grand Lodge A. O. U. W. v. Belcham, 33 N. E. 886; Knickerbocker Life Ins. Co. v. Foley, 105 U. S. 350, 26 L. Ed. 1055.

It was for the jury, not the court, to say whether deceased obtained the beneficiary certificate by false representations as to his habits of drinking intoxicating liquors. A question should never be taken from the jury where there is evidence to sustain it. Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; McRae v. Hillsboro Nat'l Bank, 6 N. D. 353, 70 N. W. 813; Pirie v. Gillitt, 2 N. D. 255, 50 N. W. 710; Slattery v. Donnelly, 1 N. D. 264, 47 N. W. 375; Cameron v. G. N. Ry. Co., 8 N. D. 124, 77 N. W. 1016.

The issue as to whether deceased obtained the beneficiary certificate sued on by false representations as to his being addicted to the use of intoxicating liquors, should have been submitted to the jury under proper instructions. McVey v. A. O. U. W., 20 Atl. 873; Meacham v. N. Y. State Mut. Ben. Ass'n, 24 N. E. 283; Van Valkenburg v. Ins. Co., 70 N. Y. 605; Belcham v. Grand Lodge A. O. U. W., 33 N. E. 886; Knickerbocker Life Ins. Co. v. Foley, supra..

*Frick & Kelly,* for respondent.

A beneficial society that knowingly permits a dissolute or drunken member to retain his membership during his lifetime will be estopped to cancel his insurance upon that ground after death. Grand Lodge A. O. U. W. v. Brand, 46 N. W. 95; High Court of Forresters v. Schweitzer, 49 N. E. 506; Coverdale v. Royal Arcanum, 61 N. E. 915; Supreme Tent, etc., v. Volkert, 57 N. E. 203; N. W. Mut. Life Ins. Co. v. Hazelett, 4 N. E. 582; McGurk v. Insurance Co., 16 Atl. 263; Newman v. Covenant Mut. Ben. Ass'n, 40 N. W. 87; Insurance Co. v. Hanna, 81 Tex. 487; Supreme Lodge v. Davis, 58 Pac. 595; Pomeroy v. Insurance Inst., 59 Am. Rep. 144.

The acceptance and retention of dues and assessments and the acceptance thereof, after death, and the failure of the defendant to declare the policy forfeited, taken singly or together, are sufficient to estop the defendant from asserting the defense set up in its answer. M. W. A. v. Lane, 86 N. W. 943; M. W. A. v. Coleman, 89 N. W. 641; Phoenix Life Ins. Co v. Raddin, 120 U. S. 183, 30 L. Ed. 644; Erdman v. The Mut. Ins. Co. of the Order of

Herman's Sons, 44 Wis. 376; Supreme Lodge v. Wollenvos, 119 Fed. 671; McCormick v. Association, 56 N. Y. Supp. 905; Supreme Lodge v. Turner, 47 S. W. 44; Supreme Court of Honor v. Sullivan, 59 N. E. 37; Home Fire Ins. Co. v. Phelps, 71 N. W. 303.

The view is very generally sustained that officers of local lodges are agents of the responsible body and that the supreme lodge is bound by their acts. Grand Lodge A. .O. U. W. v. Lachmann, 64 N. E. 1022; M. W. A. v. Tevis, 117 Fed. 369; Woodmen v. Lane, supra; Order of Forresters v. Scweitzer, supra; Mee v. Banker's Life Ass'n of Minn. 72 N. W. 74.

Beneficiary certificates are prima facie proof of good standing, and when in evidence, have the further effect of casting the burden of proof upon the defendant of showing that such good standing no longer continues. Kumle v. Grand Lodge A. O. U. W., 42 Pac. 634; Elmer v. Mut. Ben. Ass'n, 64 Hun, 639, 138 N. Y. 642, 34 N. E. 512; Chadwick v. Triple Alliance, 56 Mo. App. 463; Scheuffler v. Grand Lodge A. O. U. W., 47 N. W. 799; Lazinsky v. Supreme Lodge, 31 Fed. 592; Agnew v. Grand Lodge A. O. U. W., 17 Mo. App. 254.

A witness testified that during eleven years he had known deceased to drink twice; another pronounced the departed brother a "very moderate drinker;" another saw deceased drink from a bottle, and another in 1895 saw him "very slightly, if any, under the influence of liquor." Such testimony is wholly inadequate to establish the existence of a habit of drinking in deceased. Knickerbocker Life Ins. Co. v. Foley, 105 U. S. 350; 26 L. Ed. 1055; N. W. Life Ins. Co. v. Muskegon Bank, 122 U. S. 501, 30 L. Ed. 1100; Aetna Life Ins. Co. v. Davey, 123 U. S. 739, 31 L. Ed. 315; Wolf v. Insurance Co., 9 Fed. 249; Chambers v. N. W. Mut. Life Ins. Co., 67 N. W. 367; Van Valkenburg v. Insurance Co., 70 N. Y. 605; Insurance Co. v. Simpson, 28 S. W. 837; Grand Lodge A. O. U. W. v. Belcham, 33 N. E. 886.

Courts do not presume fraud; defendant must show the facts by proof that would be clear, satisfactory and convincing, so as to exclude every other reasonable hypothesis. Ley v. Metropolitan Life Ins. Co., 94 N. W. 568; Leman v. Manhattan Life Ins. Co., 24 L. R. A. 589.

The burden of proof was on the defendant to establish its contention as to alleged false answers as to alleged cause of decedent's

death. Insurance Co. v. Bank, 72 Fed. 413; Insurance Co. v. Wood, 73 Fed. 81; Mer. Mut. Ins. Co. v. Folsom, 85 U. S. 237; 21 L. Ed. 827; Fiske v. Ins. Co., 32 Mass. 310; Daniels v. Insurance Co., 66 Mass. 416; Supreme Lodge v. Wollschlager, 44 Pac. 598; Modern Woodmen v. Sutton, 38 Ill. App. 327; Nat'l Ben. Ass'n v. Grauman, 7 N. E. 233; Perine v. Grand Lodge A. O. U. W., 53 N. W. 367.

If the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury. Avery v. Bowdon, 6 El. & Bl. 953, 88 E. C. L. 953; McMahon v. Leonard, 6 H. of L. Cas. 992; Witkowsky v. Wasson, 71 N. C. 451; Peet v. Dakota F. & M. Ins. Co., 1 S. D. 462, 47 N. W. 532; Levitzky v Canning, 33 Cal. 299; Dodge v. Gaylord, 53 Ind. 365; Holland v. Kindregan, 155 Pa. St. 156, 25 Atl. 1077; Cole v. Hebb, 7 Gill & J. 41.

Fraternal insurance contracts should be liberally construed to effect the benevolent objects of the different bodies. Supreme Lodge K. P. v. Schmidt, 98 Ind. 374; Ballou v. Gile, 7 N. W. 561; Payne v. Mut. Rel. Soc. 2 How. Pr. 228; Mass. Ben. Life Ass'n v. Robinson, 42 L. R. A. 261; Goodwin v. Provident Savings Ass'n, 32 L. R. A. 473; Burkheiser v. Nat. Acc. Ass'n, 26 L. R. A. 112; Kratzenstein v. Western Ass'n Co., 5 L. R. A. 799; Pettit v. State Ins. Co., 43 N. W. 378; Olson v. Ins. Co., 35 Minn. 432; Price v. Ins. Co., 17 Minn. 497.

The proof of death has no probative force whatever to sustain any issue looking to the forfeiture of the beneficiary's right to the insurance. Cox v. Royal Tribe of Joseph, 60 L. R. A. 630; Bentz v. N. W. Aid Ass'n, 41 N. W. 1037; Goldschmidt v. Mut. Life Ins. Co., 7 N. E. 408; Anderson v. Supreme Council, 31 N. E. 1092; McMaster v. Ins. Co., 55 N. Y. 222.

It was within the discretion of the trial court to permit plaintiff to show in rebuttal that deceased's habits as to the use of intoxicants, were otherwise than claimed by defendant. Maier v. Mass. Ben. Ass'n, 65 N. W. 552.

The representations by a sick person of the nature, symptoms and effects of the malady, under which he is laboring at the time, are received as original evidence. 1 Greenleaf on Ev., section 102; Sanders v. Reister, 46 N. W. 680; Travelers Ins. Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437; Bennett v. N. P. Ry. Co.,

2 N. D. 112, 49 N. W. 408; Atkinson, T. & S. F. R. Co. v. Johns, 14 Pac. 237; Hagenlocker v. Railway Co., 99 N. Y. 137; Hathaway v. Ins. Co., 48 Vt. 335; Depew v. Robinson, 95 Ind. 109; Bacon v. Charlton, 7 Cush. 581; Hatch v. Fuller, 131 Mass. 574; State v. Howard, 32 Vt. 380; Elliott v. Van Buren, 33 Mich. 49; Howe v. Plainfield, 41 N. H. 135; Towle v. Blake, 43 N. H. 92; Taylor v. Railway Co., 43 N. H. 304; Rogers v. Crane, 30 Texas, 284; Insurance Co. v. Newton, supra; Ins. Co. v. Gerrish, 61 Ill. App. 140; Insurance v. Warren, 22 Am. Rep. 590; Phillips v. Kelly, 29 Ala. 628.

The declarations of a party to the suit explanatory of his physical condition at the time the declarations were made, are admissible where the circumstances warrant the inference that they were made spontaneously and not with a view to their effect upon the controversy. Whether or not they fall within this rule must be left largely to the discretion of the trial court. Hewett v. Eisengart, 55 N. W. 252; Carthage Turnpike Co. v. Andrews, 102 Ind. 138, 1 N. E. 364, 52 Am. Rep. 653; Cleveland C. C. & I. R. Co. v. Newell, 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; Blair v. Madison County, 46 N. W. 1093; Eckels v. Bates, 26 Ala. 655; Towle v. Blake, supra; Kennard v. Burton, 25 Me. 29, 43 Am. Dec. 249; Elliott v. Van Buren, supra.

ENGERUD, J. This is an action to recover upon a beneficiary certificate or policy of insurance issued by defendant to plaintiff's husband, Barney Puls, and payable to plaintiff upon the death of her husband. The trial resulted in a verdict for plaintiff. Defendant has appealed from the judgment entered on the verdict.

Appellant is a benevolent and fraternal insurance association, made up of three interdependant organizations—a supreme lodge; a state grand lodge, having authority from the higher order; and subordinate lodges throughout the state, chartered by the grand lodge. The grand lodge (appellant in this action) is the contracting and responsible body of the order. Contracts of insurance are issued and approved by its officers, and it is held responsible for the payment of all death losses. The subordinate lodges have primary authority to admit applicants to membership, subject to regulations imposed by the grand lodge, and are also charged with the duty of collecting assessments levied upon its members, and making report and remittance thereof to the grand lodge. They also have authority, under certain restrictions, to reinstate

suspended members. The beneficiary fund, out of which insurance is paid by the grand lodge, is obtained by assessments of $1 upon each certificate holder for every death. Such assessments are made by the grand lodge on the 1st day of the month, and are payable on the 28th day of the month when made. In addition to these assessments by the grand lodge, the members are also required to pay quarterly dues to the local lodge to which they belong. Barney Puls became a member of Lakota Lodge, No. 117, on the 2d day of May, 1898. At the same time he received from appellant the beneficiary certificate in question, by which appellant bound itself to pay to the beneficiary designated therein the sum of $2,000 upon the death of the said Barney Puls, subject to the conditions fixed by the constitution and by-laws of the order and the application for membership, all of which, by the terms of the certificate, were made part of the contract of insurance. Originally the certificate was made payable to one Anton Puls, but on May 2, 1901, in accordance with the rules of the order, the present plaintiff was substituted as beneficiary. On September 11, 1901, Barney Puls died. Proofs of death were duly made by the officers of the local lodge in accordance with the rules of the order and transmitted to the grand lodge. The latter body refused to pay the loss, and thereupon this action was brought.

The answer set up two defenses: First, that the insured obtained his certificate by false and fraudulent representations as to his habits with respect to the use of intoxicating liquors; second, that his death was caused directly by the use of intoxicating liquors. Either of these facts, if established, would, under the terms of the contract of insurance, relieve the defendant from liability. Defendant contends that both of these defenses were conclusively established by the evidence, and that its motion for a directed verdict should have been granted.

The trial court held that the evidence was insufficient to sustain the allegation of false representations, and instructed the jury not to consider that defense. The representations which appellant alleges were false are contained in the answers made by the insured to the following questions found in the application for membership: "Do you drink spirituous liquors? A. No habit." "Do you drink malt liquors? A. No." "Did you ever drink immoderately? A. No." The application was made in May, 1898. There is no evidence in the record that Puls drank malt liquors or that he drank

immoderately before taking the insurance. The answer, "No habit," was an affirmation that he was not an habitual user of spirituous liquor, but it was also an admission that he was not a total abstainer. The most that can be said of the evidence on this question is that it shows that the insured sometimes drank liquor, and on a very few occasions appeared to have become intoxicated. This falls far short of showing him to be an immoderate or habitual drinker. "An occasional excess in the use of intoxicating liquor does not constitute a habit, or make a man intemperate, within the meaning of the policy. * * * The habit of using intoxicating liquor to excess is the result of indulging a natural or acquired appetite by continual use until it becomes a customary practice. This habit may manifest itself by delayed or periodical intoxication or drunkenness. When the general habits of a man are either abstemious or temperate, an occasional indulgence to excess does not make him a man of intemperate habits." Bacon on Benevolent Societies, section 231. See, also, Insurance Co., v. Foley, 105 U. S. 350, 26 L. Ed. 1055; Insurance Co. v. Bank, 122 U. S. 501, 7 Sup. Ct. 1221, 30 L. Ed. 1100; Insurance Co. v. Reif, 36 Ohio St. 599; 38 Am. Rep. 613; Grand Lodge v. Belcham (Ill.) 33 N. E. 886. The question. "Did you ever drink immoderately?" referred to the applicant's previous habits, and not to exceptional and occasional acts. Chambers v. Insurance Co., 64 Minn. 495, 67 N. W. 367; 58 Am. St. Rep. 549; Van Valkenburgh v. Insurance Co., 70 N. Y. 605; Grand Lodge v. Belcham, supra. We think, therefore, the trial court was right in holding that the defense of false representation was not sustained by the evidence, and in so instructing the jury.

As to the defense that the deceased came to his death as the direct result of intoxication, the evidence was conflicting, and the trial court therefore properly denied defendant's motion for a directed verdict, and submitted the question to the jury.

The evidence chiefly relied upon by defendant to sustain its averment that Puls' death was caused by the use of intoxicating liquor was the report of death, the verdict of the coroner's jury, and the testimony of Dr. Beek. The report of death and the verdict of the coroner's jury stated that the cause of death was alcoholic poisoning. The statement in the report as to the cause of death was based upon the opinion of Dr. Beek and upon the finding of the coroner's jury. The finding of the coroner's jury as

to the cause of death was, in turn, predicated upon the opinion of Dr. Beek, who made the post mortem examination, and upon certain circumstances fully disclosed at the trial. Neither of these documents added anything to the weight of the testimony given by the doctor and other witnesses at the trial, because both documents merely set forth an opinion based on the same evidentiary facts which were before the trial jury. The respondent had nothing to do with the making of the report of death. That report was made by the officers of the local lodge pursuant to the rules of the order, and the intent and purpose of such rules were to prevent the beneficiary from having anything to do with the report. The respondent was not present and had nothing to do with the post mortem examination or the coroner's inquest. Consequently neither the report of death nor the verdict of the coroner's jury were in the nature of admissions by the beneficiary. As neither of the documents was objected to, we express no opinion as to their admissibility. It is clear that neither of the documents was conclusive evidence against the plaintiff, but had only such evidentiary weight as the circumstances attending the making of them entitled them to. Cox v. Royal Tribe (Or.) 71 Pac. 73, 60 L. R. A. 622, 95 Am. St. Rep. 752, and cases therein cited; Stevens v. Casualty Co., 12 N. D. 463, 97 N. W. 862. Under the circumstances of this case, as we have seen, they could add nothing to the weight of the testimony of defendant's witnesses.

It is unnecessary to state the testimony in detail. The evidence in behalf of defendant tended to show that the deceased appeared to be under the influence of liquor a day or two before he died; that the conditions disclosed by the post mortem examination of the body were such as would be produced by alcoholic poisoning, and that the odor of alcohol was detected when the abdominal cavity was opened. It was admitted that any of the numerous alkaloid poisons would produce the same conditions as were disclosed by the post mortem examination. The defendant's assertion that alcohol produced death, therefore, rests chiefly upon the alleged fact that the deceased had been drinking to excess, the odor of alcohol, and conditions consistent with alcoholic poisoning, but not inconsistent therewith. The evidence in behalf of plaintiff tended to show that the deceased had not been drinking and was not intoxicated during the two or three days before his death, but, on the contrary, appeared to be sober and in his usual health; that there

was no liquor in his house, and he did not drink any while sick; that the night or day before he died he became violently ill, and complained of acute pains in the region of the stomach, and said that he had drank from a bottle of horse medicine in the house. Whether he took the horse medicine by accident or design, does not appear. One of the physicians, who was a witness for defendant, testified that alcoholic poisoning does not ordinarily cause acute pain; and the doctor who testified for plaintiff testified that the odor of alcohol could not be detected unless the deceased had drank the liquor less than twelve hours before death. Upon this evidence, the case was properly one for the jury, and the verdict should not be disturbed.

The appellant further contends that the evidence shows that the deceased was not a member in good standing of the defendant order at the time of his death, because he had failed to pay his dues and assessments to the local lodge for several months. The trial court denied defendant's application, made during the trial, for leave to amend its answer to correspond with the proof, so as to allege, as a further defense, the nonpayment of dues and assessments. One of the by-laws of the defendant provides: "Any member failing or neglecting to pay all assessments made upon him for the beneficiary or guaranty funds to the financier of the lodge of which he is a member, on or before the twenty-eighth day of the month in which said assessments are made, shall forfeit all his rights as such member; shall stand suspended from all the rights, benefits and privileges of the order from and after that date, and shall not be reinstated except as hereinafter provided." It appeared from the evidence, most of which was introduced by the defendant, that one Metcalf, who had been an employer of and friend of the deceased, had, long before the death of Puls, guaranteed the payment to the financier of Puls' dues and assessments as they came due. The arrangement was that the financier of the lodge should regularly record as paid all dues and assessments against Puls, and Metcalf was to make the amounts good to the financier. It does not appear what the arrangement was between Puls and Metcalf which led to the agreement of the latter to pay these dues and assessments. Pursuant to the arrangement mentioned, the financier regularly credited Puls on the lodge records for the dues and assesments, and remitted the latter to the grand lodge as called for. After the death of Puls, Mr. Metcalf, in accordance with his agreement, paid to the financier the amounts

which the latter had advanced on Puls' account. A receipt was given therefor, dated October 15, 1901, reciting the payment by Metcalf, for Puls, of the assessments and dues. The money mentioned in the receipt, which was known as "Exhibit 2," was to reimburse the financier for money advanced by him on Puls' account under the arrangement mentioned. No provision of the constitution or by-laws is pointed out which would prevent the financier from advancing the amount of the assessment for a member, or prevent a member from borrowing from the financier for that purpose. In the absence of any such provision, a member can borrow money to pay assessments, and can constitute the lender his agent to pay the borrowed money for him, in his name, to the lodge. No advantage could be taken of the fact that the member did not take physical possession of the money, and personally pay it in. We see no reason why a member cannot accomplish the same thing by having a third person make a similar arrangement for him, and agree to reimburse the financier for the moneys so temporarily advanced. The object in fixing a day beyond which members may not permit assessments to remain unpaid is to insure the replenishment of the beneficiary and relief fund so as to permit the grand lodge to promptly fulfill its contract obligations. Where, therefore, the responsible organization has received the money assessed against a member in time, it has suffered no injury, and should not be permitted, in equity and good conscience, either before or after the death of a member, to say that a forfeiture had occurred because a member had borrowed money to pay his assessment. The evidence with relation to the transaction in question shows a loan transaction. The money was advanced with which to pay Puls' assessments from time to time as the result of an agreement between Metcalf, on behalf of Puls, and the financier of the lodge. The payment by Metcalf to the financier of the moneys the latter had advanced for Puls in his lifetime was in fulfillment of Metcalf's guaranty, and was not a payment of Puls' assessments after the time fixed in the by-laws or after death. The payments of Puls' assessments to the grand lodge were in time, and no forfeiture or suspension under the rules could result. United Commercial Travelers v. McAdam, 125 Fed. 358, 61 C. C. A. 22. There being no conflict in the evidence as to the payment of dues and assessments by or on behalf of Puls, the court rightly decided, as a matter of law, that Puls was in good standing at the time

of his death, and for the same reason properly denied defendant's motion for leave to amend.

Appellant assigns error on the admission of Exhibit 2—the receipt mentioned above. The receipt was doubtless immaterial, but, under the circumstances above stated, we do not think it was prejudicial.

Several witnesses were permitted to testify that they had not seen Barney Puls under the influence of liquor, or that they had not seen him intoxicated, on more than a few occasions. This line of testimony was objected to by defendant on the ground that it was incompetent. We think it was admissible. Defendant was endeavoring to show that the deceased was an habitual and immoderate drinker, for the purpose of establishing the alleged falsity of the application, and also to support the allegation that his death was due to excessive use of intoxicants. It was clearly competent, therefore, for the plaintiff to overcome this alleged evidence of habit by showing that persons who were well acquainted with the deceased in his lifetime, and had opportunity to observe his habits, had not seen him drink, except on infrequent occasions. If the deceased was in the habit of drinking to excess, it could hardly fail to be observed by his neighbors and associates. The fact that they seldom saw him drink or become intoxicated is certainly strong evidence that he did not have the drink habit. The witnesses who testified on this subject were such as had opportunity to observe his habits. The testimony was competent.

Appellant assigns error on the admission of the testimony of two witnesses who were in attendance upon deceased part of the time during the last twenty-four hours of his life, to the effect that he seemed to be suffering intensely, and complained frequently of acute pains in the stomach. Each of the witnesses was also permitted, over objection, to testify that the deceased, while suffering from these pains, said that he had taken some horse medicine, and indicated to one of the witnesses the bottle from which he had taken it. The witness did not know what the nature of the medicine was. This testimony, so far as it related to the apparent suffering of the deceased, and to his acts and complaints, expressing the nature and degree of pain he was at the time undergoing, was clearly admissible, on familiar principles. Bennett v. Ry. Co., 2 N. D. 112, 49 N. W. 408, 13 L. R. A. 465. The testimony as to what the deceased said as to the supposed cause of his

suffering presents a question of more difficulty. The evidence showed that the deceased, while alone in his house, was suddenly taken violently ill, and died within less than twenty-four hours. It is undisputed that his death was due to poison. It was defendant's theory that the poison was alcohol, which the deceased had voluntarily imbibed to produce intoxication; and it relied upon evidence which it claimed excluded the probability of any other cause of death than alcoholic poisoning, resulting from the excessive use of intoxicating liquor. The statements in question were made by the deceased, while in the midst of intense suffering, to those who were trying to find means to give him relief. If the horse medicine had caused the trouble, it was most natural for the sufferer to say so to his nurses, in explanation of his condition. The circumstances under which the statement was made absolutely preclude the idea that the statement was untrue or premeditated, or was prompted by other motives than a hope for immediate relief. It was called forth and was immediately connected with the action of the poison within him. We think the statement was part of the res gestae. The fact that the fatal drink may have been taken some hours before is not controlling. The nature and strength of the connection between the act and the declaration must be looked to, as well as the connection in point of time and place. Closeness in point of time and place to the act is immaterial, but not the only test to be applied in determining whether a declaration is part of the res gestae. It is obvious that the competency of the evidence cannot be tested by a clock or a foot rule. The case of Insurance Co. v. Mosley, 75 U. S. 397, 19 L. Ed. 437, is directly in point. In that case, as in this, the cause of the death of the insured was the crucial question. Declarations of the deceased as to the cause of the injury, made to one who found him in pain soon after the accident, were admitted in evidence. After an exhaustive review of the authorities, Mr. Justice Swayne, speaking for the majority of the court, said: "In the complexity of human affairs, what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud and falsehood as to both, but there is no objection to one that does not exist equally as to the other. To reject the verbal fact would not infrequently have the same effect as to strike out the controlling member from a sentence, or the controlling sentence from its context. * * *

Here the principal fact is the bodily injury. The res gestae are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress. Where sickness * * * is the subject of inquiry, the sickness * * * is the principal fact. The res gestae are the declarations tending to show the reality of its existence, and its extent and character. The tendency of recent adjudication is to extend, rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority. * * * In the ordinary concerns of life, no one would doubt the truth of these declarations, or hesitate to regard them, uncontradicted, as conclusive. Their probative force would not be questioned. Unlike much other evidence equally cogent for all the purposes of moral conviction, they have the sanction of law as well as of reason." Although that decision has been the object of much adverse criticism by able jurists, we are convinced that it is sound in principle, is in accord with common sense, and has become the prevailing rule. State v. Martin (Mo. Sup.) 28 S. W. 12; Entwhistle v. Feighner, 60 Mo. 214; Harriman v. Stowe, 57 Mo. 93; Johnson v. State (Wyo.) 58 Pac. 761; Lewis v. State (Tex. App.) 15 S. W. 642, 25 Am. St. Rep. 720; Com. v. Werntz (Pa.) 29 Atl. 272; Linderberg v. Min. Co. (Utah) 33 Pac. 692; Railway Co. v. Buck (Ind.) 19 N. E. 453, 2 L. R. A. 520, 9 Am. St. Rep. 883; O'Connor v. Ry. Co., 27 Minn. 166, 6 N. W. 481, 38 Am. Rep. 288; Hermes v. Ry. Co. (Wis.) 50 N. W. 584, 27 Am. St. Rep. 69; Keyes v. City, 107 Iowa, 511, 78 N. W. 227; People v. Vernon, 35 Cal. 49, 95 Am. Dec. 49; Pierce v. Van Dusen, 78 Fed. 693, 24 C. C. A. 280; Keyser v. Ry. Co. (Mich.) 33 N. W. 867; Railway Co., v. Leverett, 48 Ark. 333, 3 S. W. 50, 3 Am. St. Rep. 230. We think the evidence objected to was admissible under the rule recognized by the foregoing authorities, all of which are in accord with the views expressed by this court in Balding v. Andrews, 12 N. D. 268, 96 N. W. 305.

The foregoing opinion disposes of all the assignments of error which appear to us to have any merit.

We find no error in the record, and the judgment is accordingly affirmed. All concur.