[File No. Cr. 147.]

STATE OF NORTH DAKOTA, Respondent, v. JOSEPH J. MYRES, Appellant.

(274 N. W. 851.)

Opinion filed July 31, 1937.   Rehearing denied September 16, 1937.

*A. Benson* and *E. R. Sinkler,* for appellant.

*P. O. Sathre,* Attorney General, and *Harold P. Thomson,* State's Attorney, for respondent.

BURR, J.   On June 8, 1936 while one Jonasson, deceased, was seated, leaning back with his head against the wall, the defendant, without any provocation, struck him a hard blow on the forehead with his clenched fist, momentarily dazing him, and on his attempting to rise the defendant struck him on the left cheek.   For five days the deceased performed his usual work as a farmer and township road overseer, though complaining of continuous headache, and then when drinking beer in a saloon during extremely hot weather collapsed while standing at the bar.   Dr. Flaten, the family physician, was called. Upon regaining consciousness the deceased complained of intense head-

ache. The doctor found no evidence of paralysis, but as the condition did not improve deceased was taken to the hospital at Grafton on June 14, where he remained for fifteen days under the care of Dr. G. W. Glaspel, Dr. C. J. Glaspel, and Dr. Flaten. These doctors diagnosed his condition as caused by cerebral hemorrhage and he was treated accordingly. He remained in the hospital about two weeks and then went home. On July 7 he returned to the hospital and died that day. A post-mortem examination was had under the direction of Dr. French, dean of the School of Medicine, assisted by the doctors named.

The defendant was convicted of manslaughter in the second degree and appeals from the order denying his motion for a new trial and from the judgment entered.

There are fifty-nine specifications of error, based upon complaints of the court's rulings in the introduction of testimony, and an allegation that the verdict is not sustained by and is contrary to the evidence.

In specifications 1 to 3 inclusive defendant complains that the court permitted spectators and members of the family to testify regarding the physical appearance, size, apparent health, etc. of the deceased at the time the blows were received; and in 5 to 11 and 15 to 32 that the court permitted witnesses to testify that from June 8, 1936 until the time the deceased entered the hospital he complained of continuous, violent headache. Specifications 12 to 14 are leveled at the rulings of the court permitting a witness of the fracas to testify that he thereafter asked the defendant how he was feeling and the latter said he had a headache.

With the exception of these three specifications and specification No. 4, it is quite clear the expressions of pain were voluntary, spontaneous, and apparently naturally made while suffering. These three were objections to neighborly inquiries—the answers being statements of present suffering. The effect was harmless in the light of the situation hereafter detailed, even if the rulings were erroneous.

Specification No. 4 deals with a statement made by the deceased to the witness, about half an hour after the blow was struck, to the effect, "it was an awful blow that he got;" but as the next question and answer showed the defendant was not present when this was said, the court struck it from the record and cautioned the jury against considering it.

Expressions of pain, apparently voluntary and spontaneous in character, may be shown in such a case as this when apparently free from planning. The existence of such bodily sensations can be known only to the person who experiences them and so it is generally recognized that the declarations of a person experiencing such sensations, telling of the location and character of the pain, are admissible, provided that they are made while he is suffering, and this, of course, he alone can tell. Birmingham Union R. Co. v. Hale, 90 Ala. 8, 8 So. 142, 24 Am. St. Rep. 748; Central R. Co. v. Smith, 76 Ga. 209, 2 Am. St. Rep. 31; Roth v. Travelers' Protective Asso. 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97.

There are two generally recognized situations wherein it is permissible to state such declarations. One is when expressed to a physician or surgeon for the purpose of medical advice and, treatment. Birmingham Union R. Co. v. Hale, 90 Ala. 8, 8 So. 142, 24 Am. St. Rep. 748, supra; Central R. Co. v. Smith, 76 Ga. 209, 2 Am. St. Rep. 31, supra. The other is where they are the natural and spontaneous exclamations of present pain and suffering, and these may be stated by "any competent person who was in a position to know." Federal Betterment Co. v. Reeves, 77 Kan. 111, 93 P. 627, 15 Ann. Cas. 796; Ewing v. Wichita R. & Light Co. 91 Kan. 388, 137 P. 940; Thomas Madden, Son & Co. v. Wilcox, 174 Ind. 657, 91 N. E. 933, 937; Delmar v. Venables, 125 Md. 471, 94 A. 89, 93; Williams v. Great Northern R. Co. 68 Minn. 55, 60, 70 N. W. 860, 862, 37 L.R.A. 199.

While Puls v. Grand Lodge, A. O. U. W. 13 N. D. 559, 102 N. W. 165, may not be directly in point, yet the principle is stated with support and objections (13 N. D. pp. 571–573).

These statements are admissible because of their relation to the issue and it is for the court in the first instance to determine whether the conditions for admission are guarded sufficiently. The court in the first instance is required to determine the admissibility, and there could be no error in this case for the results of the autopsy show conclusively the deceased must have been suffering pain known as headache, and thus his statement of such fact is corroborated. The medical testimony showed a sudden and violent injury to the brain that in its very nature would cause severe headaches, and while in a sense the deceased was the only one who could testify positively as to his head-

ache, nevertheless the testimony was competent as bearing upon the changed condition and was a matter relevant to the issue. The facts discovered on the autopsy showed without the shadow of a doubt that the lesions of the brain, the blood clots, and the general condition of the brain would in the very nature of the case cause the headaches and conditions of which the patient complained.

This is not a case where the deceased sat down and calmly gave a narrative of his condition, wherein he could allow his imagination full play. There is always danger that alleged conditions may be manufactured; but where it appears the declarations are spontaneous exclamations of present pain and suffering, not responsive to questioning nor the statement of a narrative, the court is justified in permitting such testimony to be received. This matter is admirably discussed in 3 Jones Commentaries on Ev. § 1213, with a host of citations of authority. No error is shown in permitting such testimony to be received.

The State had a right also to show that prior to this altercation the deceased was a strong, healthy, vigorous man, of good physique, not subject to any known illnesses or under a doctor's care, and that immediately after the blows were struck, and continuously until the day of his death, the deceased complained of pain and violent headache. These matters were relevant to the issue as bearing upon the changed condition and the cause of death.

Specifications of error Nos. 33 to 37 inclusive and 39 to 41 inclusive treat of the action of the court in permitting Dr. C. J. Glaspel to state the history of the case as related to him by the deceased when he came to the hospital for treatment. It was necessary for the doctor to question him relative to his condition in order to treat him intelligently. The deceased stated that a few days prior he had been struck a blow that landed on his forehead between his eyes, that he had been struck a second time and that he had become somewhat dazed, that he suffered continuously thereafter from headache, and that later he fainted in the saloon.

Specification of error No. 38 deals with the hypothetical question addressed to the doctor:

"Now, Doctor, from your knowledge as the attending surgeon and physician of this man, Julius Jonasson, at all times from the 13th of

June, 1936, up to and including the 7th day of July, 1936, from your treatment, diagnosis of his case, the history of his case as given to you by him, the progress and the observation of his case and condition made by you during this period, from your examination of his body at the time of the post-mortem, from your observation of all of the findings at that post-mortem held the day after his death, namely on the 8th day of July, 1936, from all of that what, in your opinion, would you state was the cause of the death of Sigurjon J. Jonasson?"

Specification of error 42 deals with the opinion of this doctor as to the effect of the blows received in causing intercranial hemorrhage, and specification 43 is an objection to the opinion expressed by the doctor that the hemorrhage was a traumatic one.

Specifications 49 to 53 inclusive deal with the testimony of Dr. Flaten when he detailed the history of the case as given to him by the deceased in the course of treatment, why the deceased wanted to leave the hospital—not because of trivial conditions but because of financial conditions—what he found and observed from examination of the deceased after he left the hospital, and statements made by the deceased, in the course of treatment, as to his pains and aches, and as to when the headaches began.

Specifications 54 to 57 inclusive are similar objections dealing with the examination of Dr. G. W. Glaspel relative to the history of the case as stated to him by the deceased in the course of treatment and related in detail by the doctor prior to the opinion which he expressed regarding the cause of death; while specifications 58 and 59 deal with the opinion expressed by this doctor. This doctor, after a lengthy cross-examination as to all that the deceased told him in the matter of treatment, what he found upon his examination, what he observed at the post-mortem, the condition of the brain, blood vessels, heart, lungs, and other organs of the defendant showing everything but the brain to be normal was asked,

"Doctor, from your examination of Mr. Jonasson in your capacity as his physician, from the history of his case given to you and received by you in your professional capacity, from your observations at the post-mortem examination, have you formed an opinion as to the cause of the death of Mr. Jonasson?".

The jury must know all the facts upon which the expert bases his

opinion, and it is true that in this specific question the doctor was not asked to base his opinion on the history of the case given to him *by the patient,* that it was not limited to this in exact terms, and also includes "received by you in your professional capacity;" but it is very clear from the whole record that the only history of the case this physician received was from the deceased himself in the professional capacity and all was told by the doctor to the jury. Cross-examination did not reveal nor even suggest any other source. In answer to one question propounded with reference to the history, the doctor stated he was not certain whether he could answer from statement made by the deceased or by friends and so he did not relate it. This is the only question of that character.

Appellant urges that the court committed error in permitting the experts to base their opinion of the cause of death "partly on the history of the case." The case of Hunder v. Rindlaub, 61 N. D. 389, 237 N. W. 915, cited and relied upon by the appellant, is not in point for this complaint. In this case cited the expert based his opinion partially upon a history received from some source not indicated and the facts of which were not related to the jury. The evidence did not disclose this "history" (61 N. D. 389 at p. 418). Consequently, the jury could not pass upon the basis for the opinion. At page 421 of 61 N. D., we state the bases necessary for the opinion solicited in the case cited.

Appellant cites also Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359, wherein we held (15 N. D. 157 at p. 173) the court properly sustained objections to questions calling for the opinion of an expert. However, in this case cited we did not hold such opinion could not be based upon "the history of the case" as related to the doctor to enable him to treat the patient and detailed by him to the jury; but because "a very material part of the facts upon which his opinion was asked *not appearing in evidence,* the question was improper," and therefore the ruling of the trial court was correct.

It is well settled that the opinions of physicians based in part on the declarations of the patient made by the patient himself to the physician to enable the latter to determine upon the proper course of treatment are competent. As said by the Supreme Court of Massachusetts,

"The opinion of a surgeon or physician is necessarily formed in part on the statements of his patient, describing his condition and symptoms and the causes which have led to the injury or disease under which he appears to be suffering. . . . The existence of many bodily sensations and ailments which go to make up the symptoms of disease or injury can be known only to the person who experiences them. It is the statement and description of these which enter into and form part of the facts on which the opinion of an expert as to the conditions of health or disease is founded. As they can be proved only by the declarations of the party whose bodily condition is the subject of inquiry, such declarations must be admitted, or the proof of them would fail altogether." Barber v. Merriam, 11 Allen, 322, 324, 325. See also Quaife v. Chicago & N. W. R. Co. 48 Wis. 513, 524, 4 N. W. 658, 665, 33 Am. Rep. 821.

"The declarations of the party himself are received to prove his condition, ills, pains, and symptoms, whether arising from sickness, or an injury by accident or violence. If made to a medical attendant, they are of more weight than if made to another person. But to whomsoever made, they are competent evidence. . . . It must relate to the present, and not the past. Anything in the nature of narration must be excluded. It must be confined strictly to such complaints, expressions, and exclamations, as furnish evidence of 'a *present* existing pain or malady.' " Travelers' Ins. Co. v. Mosley, 8 Wall. 397, 405, 19 L. .ed. 437, 440.

This history was preliminary to the course of treatment. It enabled the doctors to decide on a course of treatment. This history as related by the deceased was stated to the jury prior to the opinions and the jury knew the facts upon which the experts based their opinions. The description of the condition of the patient when the treatment began and his changing condition up to the time of his death were stated with considerable detail.

Defendant asserts that the verdict is contrary to the evidence. No evidence was offered by the defendant. The evidence produced by the State is direct, consistent, and uncontradicted. There is but one question—is it sufficient to sustain a verdict of guilty beyond a reasonable doubt?

It is the contention of defendant the death of the deceased is not

traced sufficiently to the blows received, but that the autopsy showed the death could readily have been caused by latent diseases whose manifestations were coincidental with this affair.

The blows struck did not fracture the skull; but immediately thereafter deceased suffered severe headaches and died twenty-nine days thereafter. Up to the time of the trouble he was healthy. The four doctors who testified agreed as to the physical condition of the deceased as revealed by the autopsy. Dean French testified the heart with its walls and valves were all "very normal" and the lungs, liver, kidneys, stomach, and intestines the same. The brain was examined and was found clotted, the cavities on each side were full of blood, the blood vessels and arteries of the brain otherwise were normal except for the hemorrhage, and there was nothing to indicate other than a normal condition except for this condition.

The doctors showed fully there were two classes of intercranial hemorrhage, traumatic and spontaneous, the former due to an injury and the latter to gradual hardening and weakening plus high blood pressure. In apoplexy or a spontaneous hemorrhage the place where a hemorrhage would ordinarily be found is the internal capsule, and no hemorrhage was found therein. The opinion of the Dean was that the hemorrhage was traumatic. The doctor showed it was possible to have a traumatic hemorrhage without a fracture of the skull and the reasons therefor were given. There was no indication of any diseased state of the blood vessels and nothing to indicate deterioration by syphilis or other diseases. The doctor gave it as his best judgment that the traumatic hemorrhage was caused by conditions from the outside such as a hard blow on the head with the fist. The other doctors corroborated this testimony. There is no contradiction. The doctors show that the condition of the deceased was caused by an injury received about the time of this fracture; that it must have been caused by a blow or other similar injury; and that all conditions to indicate any other kind of hemorrhage were wanting.

It is true that the deceased fainted while in the saloon and the argument is made that the drinking of cold liquor on a hot day at that time had the ill effect of causing the fainting, indicating apoplexy or some similar condition. The expert testimony negatives any such cause. The State was required to prove beyond a reasonable doubt

that the death of the deceased was the direct result of the blow, administered by the defendant without justifiable or excusable cause. That the defendant struck the deceased a severe blow on the head without justifiable or excusable cause was established beyond the peradventure of a doubt and by direct evidence. That this was the cause of the death must also be established; but this fact may be proven in the same manner and with the same character of testimony as other facts may be proven. The State undertook to prove this by the exclusion of every other form of injury. In the fainting spell in the saloon there was no indication that the deceased injured his head as he sank to the floor and the violent headaches were in existence prior thereto. By the exclusion of all other reasonable hypotheses of death and the complete establishment of the injury received with its immediate resulting effects, it must be clear the jury was justified in finding that the deceased came to his death because of the unprovoked blow administered to him by the defendant.

No error being shown, the judgment of the lower court is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and MORRIS, JJ., and MILLER, Dist. J., concur.